13300

GILLESPIE v. BLACKWELL ET AL.

(161 S. E., 869)

*Messrs. Mann & Plyler* and *W. C. Mann,* for plaintiff,

*Messrs. John M. Daniel, Attorney General* and *Cordie Page* and *J. Ivey Humphrey, Assistants Attorney General* for defendant.

December 14, 1931.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This action was brought in the original jurisdiction of the Court for the purpose of enjoining the defendants, the Secretary of State, the Comptroller General, the State Treasurer, and the Governor, from declaring the office of county treasurer for Pickens County vacant on account of the failure of the plaintiff, Jesse D. Gillespie, the county treasurer, to furnish an official bond with a surety company as surety as required by an Act of the General Assembly (37 Stat. at Large, 151). A rule to show cause, returnable on October 12, 1931, and a temporary restraining order were issued by Mr. Justice Cothran. The defendants made return, and the matter duly came on for hearing.

The Act in question is as follows: "That from and after the approval of this Act the Treasurer of Pickens County shall be required to furnish an official bond in the usual form,

in the sum of Forty Thousand ($40,000.00) Dollars, the Supervisor of Pickens County shall furnish an official bond in the sum of Ten Thousand ($10,000.00) Dollars, and the Superintendent of Education of Pickens County shall furnish an official bond in the sum of Ten Thousand ($10,000-.00) Dollars. Said bonds shall be executed by the respective officials and some reputable Surety Company authorized to do business in this State, and shall be in the usual form and have the same conditions as now fixed by law for such official bonds; the premium on said bonds shall be paid by the County of Pickens as other liabilities of said County are paid."

Plaintiff contends, *inter alia,* that this Act is a special law —relating only to Pickens County—where a general law can be made applicable, and is, therefore, in violation of Article 3, § 34, Subdivision 9, of the State Constitution.

Section 34 provides: "The General Assembly of this State shall not enact local or special laws concerning any of the following subjects or for any of the following purposes, to wit: I. To change the names of persons or places. II. To incorporate cities, towns or villages, or change, amend or extend the charter thereof. III. To incorporate educational, religious, charitable, social, manufacturing or banking institutions, not under the control of the State, or amend or extend the charters thereof. IV. To incorporate school districts. V. To authorize the adoption or legitimation of children. VI. To provide for the protection of game. VII. To summon and empanel grand or petit jurors. VIII. To fix the amount or manner of compensation to be paid to any county officer except that the laws may be so made as to grade the compensation in proportion to the population and necessary service required. IX. In all other cases, where a general law can be made applicable, no special law shall be enacted. X. The General Assembly shall forthwith enact general laws concerning said subjects for said purposes, which shall be uniform in their operations: Provided, That nothing contained in this

Section shall prohibit the General Assembly from enacting special provisions in general laws. XI. The provisions of this Section shall not apply to charitable and educational corporations where, under the terms of a gift, devise, or will, special incorporation may be required."

It will be noted that the first eight subdivisions of the section enumerate certain subjects as to which special laws are expressly prohibited, while Subdivision 9 applies to all other cases where a general law can be made applicable. This subdivision, however, must be construed in connection with the proviso in the tenth subdivision. While under Subdivision 9 special laws are prohibited in all cases where a general law can be made applicable, it is proper for the General Assembly, under the proviso in Subdivision 10, to enact special provisions in general laws. As to the expressions, "local or special laws" and "special provisions in general laws," it was said in *Grocery Company v. Burnet,* 61 S. C., 205, 39 S. E., 381, 58 L. R. A., 687, that they do not mean the same thing, they were intended to be construed in such a manner that neither would practically destroy the force of the other, and that under such construction the prohibition as to the enactment of local or special laws must not be held to practically nullify the right to enact special provisions in general laws. On the other hand, it was said in *State v. Burns,* 73 S. C., 194, 52 S. E., 960, 961 : "To reconcile these apparently conflicting ideas, we must construe 'special provisions in general laws' so as not to practically nullify the purpose to uproot local or special legislation as to certain subjects and to secure general laws thereon having uniform operation throughout the State."

And, in order to give fair effect to the proviso, in Subdivision 10, it is held that, although a statute containing "special provisions" may not in express terms purport to amend a prior general law on the same subject, yet such statute will be regarded as an amendment of the general law where by necessary implication such is its purpose and effect.

*Grocery Company v. Burnet, supra; State v. McCaw,* 77
S. C., 351, 58 S. E., 145; *City of Columbia v. Smith,* 105
S. C., 348, 89 S. E., 1028.

Is the statute here in question, when viewed in the light of these general guiding principles, unconstitutional? We think it is, in part. The Legislature, by enacting a general law with respect to the acceptability of sureties on official bonds of county officials required by law to give bond, has declared in effect that a general law *can be made applicable* in such cases. *Bank v. Farmington Corporation,* 99 S. C., 475, 83 S. E., 637; *Barfield v. Mercantile Company,* 85 S. C., 186, 67 S. E., 158, 159. Section 749 of Volume 3 of the 1922 Code provides in part: "The said bond or policy shall be made payable, in case of loss, to the State: *Provided, however,* That before any county official, hereafter elected or appointed to any county office in this State, who is required by law to give bond, shall enter into the discharge of the duties of his office, he shall secure bond in some reliable surety company authorized to do business in the State of South Carolina: *Provided, That if any official be refused bond by any of said surety companies, after proper application, a personal bond shall be accepted when approved as now provided by law."* (Italics added.)

While it is primarily for the Legislature to decide whether a general law can be made applicable in any specific case, the question is ultimately a judicial one (*Barfield v. Mercantile Co., supra*), in solving which, the Courts will give due consideration to the opinion of the Legislature, a co-ordinate branch of the government. But, aside from such consideration, we can reach no other conclusion from the facts contained in the record than that a general law can be made applicable in this case.

In *Sirrine v. State,* 132 S. C., 241, 128 S. E., 172, 175, the Court thus quotes from Freeman, note, 93 Am. St. Rep., 111: "A law is not constitutional if it confers particular privileges, or imposes peculiar disabilities or burdensome

conditions in the exercise of a common right upon a class of persons arbitrarily selected from the general body of those that stand in the same relation to the subject of the law. The Legislature may classify, for the purpose of legislation, if some intrinsic reason exists why the law should operate upon some and not upon all, or should affect some differently from others, but this classification must be based upon differences which are either defined by the Constitution, or are natural or intrinsic, and which suggest a reason that may rationally be held to justify the diversity in the legislation. It must not be arbitrary, for the mere purpose of classification. The class must be characterized by some substantial qualities or attributes, which render such legislation necessary or appropriate for the individuals of the class."

There is no showing that the office of treasurer of Pickens County is different in any respect, naturally or intrinsically, or as defined by the Constitution, from the same office in the other counties of the State, so as to justify placing it in a classification to itself—there is a total lack of those "substantial qualities or attributes" which render special legislation for such office necessary or appropriate.

In *State v. Ferri,* 111 S. C., 219, 97 S. E., 512, it is said (quoting syllabus) : "Act Feb. 15, 1916 (29 St. at Large, 656), prohibiting traffic in seed cotton or unpacked lint cotton within counties containing cities of 50,000 inhabitants or more, between August 1st and December 31st of any year, is special legislation, and hence unconstitutional; there being only one county in State with city of such population, and there being no reason why law regulating seed cotton traffic in such county should be different from that affecting other counties where such traffic is regulated by Cr. Code 1912, § 454, applying to State as a whole."

In *State v. Hammond,* 66 S. C., 219, 44 S. E., 797, 800, in which the Court considered the constitutionality of an Act making it a misdemeanor to fail to remove a dam from across a running stream in certain counties, after forty-eight

hours' notice to remove, Mr. Justice Jones made these pertinent remarks: "What possible reason can be assigned for making it a misdemeanor to so obstruct a running stream in Abbeville, while it would not be a misdemeanor to obstruct a running stream in the adjoining county of Greenwood? Why should running streams in Lancaster be so obstructed with impunity, while it is a crime to do a similar act in York or Chester? A dam across a running stream in any part of the State would necessarily obstruct the flow of water and sand in said stream, and would ordinarily cause some damage to lands subject to the back water, and would as likely endanger the health of the community in one county as well as in another. In every county the same *kind* of injury or danger would necessarily or ordinarily result from such obstructions, even though it be admitted that the *degree* of the injury or danger may not be the same. The nature of the conduct sought to be made punishable as crime is not such as to make it punishable in one part of the State and not in another. We speak of crimes against the State, and not mere municipal offenses. If it be said that conditions in the included counties are peculiar, and seem to call for penal legislation of the kind mentioned, still a general law could be made applicable to the whole State, so as to operate wherever such conditions exist, and whenever similar or like conduct takes place. No one would think for a moment that it would be competent for the Legislature to make the burning of a tobacco warehouse or barn punishable as arson, when committed in Darlington or Sumter or Florence, because the conditions in those counties make such legislation desirable, and then provide no punishment for like acts, should they occur in other counties in this State, even though the conditions there are such as to render such burning very improbable."

In *Barfield v. Mercantile Company, supra*, a statute providing for a cotton weigher at Bethune and Pickens was declared unconstitutional as being special legislation; the Court

saying: "But if there be such a public interest as distinguished from a public use as would uphold such legislation, if general, the argument against the statute as special and local is strengthened, for no reasonable ground can be suggested why such legislation cannot be made general so as to apply to all markets in the State where cotton is sold to a specified extent. Is there any public reason why private weighing of cotton should be unlawful at Bethune, S. C., while perfectly lawful at other similar markets? See *State v. Hammond,* 66 S. C., 220, 44 S. E., 797."

For the reasons indicated, we think the following part of the Act of 1931 (37 Stat. at Large, 151), is unconstitutional, as being special legislation where a general law can be made applicable: "Said bonds shall be executed by the respective officials and some reputable Surety Company authorized to do business in this State, and shall be in the usual form and have the same conditions as now fixed by law for such official bonds."

But this does not necessarily mean that the entire Act is thereby rendered inoperative. The other portion of the statute, fixing the amount of the official bonds for the several officers of Pickens County named therein and providing for the payment of the premiums on such bonds, is clearly constitutional and valid, and it should be sustained if the required conditions are met.

Where a part of a statute is constitutional and a part unconstitutional, the former may be sustained in proper cases while the latter falls. Such a result, however, depends upon certain conditions, namely: (1) That the constitutional part of the Act is capable of being severed from the unconstitutional part so that each part may be read and may stand by itself; (2) that the striking out of the unconstitutional part will not destroy the apparent intention of the Legislature in its enactment of the law; and (3) that it is not necessary to insert words or terms to separate the constitutional part from the unconstitutional part and to give

effect to the former alone. We are satisfied, from a careful consideration of the Act in question, that it meets all the foregoing conditions, and that the constitutional part of it should be allowed to stand. While the plaintiff, therefore, as treasurer of Pickens County, may execute his official bond according to the provisions of the general law as to sureties, the amount of such bond must be at least that specified in the Act of 1931. In view of this conclusion, we deem it unnecessary to discuss or pass upon any other question presented by the petition.

The judgment of this Court is, that the defendants be, and are hereby, enjoined from declaring the office of county treasurer of Pickens County vacant by reason of the plaintiff's failure to furnish and file an official bond with a surety company as surety, as required by Act No. 115, passed at the 1931 session of the General Assembly of South Carolina (37 Stat. at Large, 151). And it is so ordered.

Mr. Chief Justice Blease and Messrs. Justices Carter and Bonham concur.

Mr. Justice Cothran did not participate on account of illness.