14875

TOWNSEND v. RICHLAND COUNTY *ET AL.*

(2 S. E. (2d), 777)

*Mr. J. Q. Marshall,* for appellant,

*Mr. Wm. Elliott, Jr.,* for respondent,

May 8, 1939.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

This action was commenced by the plaintiff, a former Master in equity for Richland County, to recover fees alleged to be due him under the general law. He alleges that he was deprived of such fees by reason of an Act of the General Assembly which provides for the payment of salaries in lieu of fees to certain officers of Richland County. Acts 1932, page 1178, Act No. 646.

The relevant portion of the Act reads as follows: "Be it enacted by the General Assembly of the State of South Carolina: Commencing April 1, 1932, all public officers of Richland County shall be paid a salary in lieu of fees as follows, to wit:  *  *  *  Master in Equity, $4,500.00 *  *  *.  The salaries hereinabove provided to be in lieu of all fees of whatever nature or description."

The appellant contends that the statute is special legislation, and is in conflict with Section 34, Article III of the Constitution, which, after inhibiting special legislation in certain enumerated cases, provides that (Subsection 9), "In all other cases, where a general law can be made applicable, no special law shall be enacted."

The appeal is from the judgment of the lower Court holding the Act to be constitutional.

Appellant does not claim that any other constitutional provision is violated, but argues that it is clear that a general law providing a salary for the office of Master with state-wide effect, might have been passed. The Act, of course, can be sustained only upon the theory that a general law cannot be made applicable.

The definite limitations fixed by the Constitution show an intention to circumscribe legislative action, but not to take it away. Some room, it must be conceded, is left by the Constitution for the exercise of the legislative judgment in determining when and where a general law can be made applicable. Probably no authority will deny that the Legislature has a sound discretion to decide the question in the first instance, and that the Courts should not interfere to set aside a statute unless the legislative discretion has been clearly and palpably abused. Accordingly, whenever the issue arises, due consideration is given the determination of the law-making branch of the government that a special law is necessary. *Sirrine v. State,* 132 S. C., 241, 128 S. E., 172; *Gillespie v. Blackwell,* 164 S. C., 115,

161 S. E., 869. The ultimate decision, however, rests with the Court. *Gillespie v. Blackwell, supra.*

That the Act before us embodies special legislation is conceded, but that is not conclusive. The language of the Constitution which prohibits a special law where a general law can be made applicable, plainly implies that there are or may be cases where a special Act will best meet the exigencies of a particular case, and in no wise be promotive of those evils which result from a general and indiscriminate resort to local and special legislation.

The rule of law is, that an investigation like this, concerning the constitutionality of an Act of the Legislature, begins with the presumption that the Act is valid. All doubts or uncertainties arising, either from the language of the Constitution or of the Act, must be resolved in favor of the validity of the Act, and the Court will assume to declare it void only in case of a clear conflict with the Constitution. The duty of the Court is to so construe Acts of the Legislature as to uphold their constitutionality and validity if it can reasonably be done, and if their construction is doubtful the doubt will be resolved in favor of the law. *State v. Broad River Power Co.,* 177 S. C., 240, 181 S. E., 41; *Crawford v. Johnston,* 177 S. C., 399, 181 S. E., 476; *Clarke v. South Carolina Public Service Authority,* 177 S. C., 427, 181 S. E., 481; *Thomas v. Macklen,* 186 S. C., 290, 195 S. E., 539.

The lower Court held, upon an agreed statement of facts submitted by the parties, that the Act was special legislation, but special legislation not prohibited by the Constitution, because a general law could not be made applicable with reference to the compensation of all Masters.

Heretofore, in considering whether certain special laws violated the constitutional provision under discussion, we have had occasion to point out that the question was largely foreclosed in those cases by reason of the fact that the Legislature itself had settled the question by actually pass-

ing an applicable general law *Salley v. McCoy,* 182 S. C., 249, 189 S. E., 196; *Gillespie v. Blackwell, supra.*

But this is not the case with reference to the office of Master. No general law fixing a salary has been enacted. By reference to Section 3678, 1932 Code, it will be noted that the statute creating the office of Master was itself a special Act establishing the office in only twenty-one of the forty-six counties of the State. *Dean v. Spartanburg County,* 59 S. C., 110, 37 S. E., 226.

The lower Court, we think, has very correctly and convincingly stated the case for the constitutionality of the statute. Agreeing in its view, as we do, we quote from the decree:

"The Legislature, it appears, fully realized the fact that the need for the office of master in the various counties in which it should be created varies according to the peculiar circumstances existing in the respective counties, and in order to accommodate the office to these varying needs, found it expedient to create the office with correspondingly varying features, such as difference in method of appointment, or election, length of term for which chosen, deprivation of right to engage in the practice of law, permission to practice under prescribed or limited conditions, method and amount of compensation, and as to how the office shall be conducted, whether in single capacity or in conjunction with some other office.

"Therefore, we cannot escape the conclusion that the Legislature when it created the office of Master fully realized that in order to effectuate its full purpose special enactments to accommodate local and varying needs would necessarily have to be made, and had in mind circumstances similar to the one now before the Court.

"The statute under which masters' offices were created was a special Act of the Legislature (Code 1932, Sections 3678-3706). It only affects certain counties in creating the office of masters, these being only twenty-one in number. In

twenty of these counties only one master is provided for. Yet a special provision is made for Charleston County in creating two masters.

"Various provisions are made for the appointment of such masters. For instance, in most of the counties the master shall be appointed by the Governor on advice and consent of the Senate, but in Dorchester County he is appointed upon the recommendation of the senator from said county In Orangeburg County the master shall perform the duties of Judge of Probate in case of vacancy; but in no other county. It is provided that 'In the counties of Berkeley and Dorchester the masters shall attend at their respective court houses at least twice in each week for the transaction of business.'

"Later the statute was amended so as to provide for the election every four years of a master in Kershaw County. Likewise the office of master for Newberry County was abolished in 1923 and his duties devolved upon the Judge of Probate.

"The statute was amended in 1923 so as to create an office of master in Allendale County, the duties, however, being imposed upon the Judge of Probate. In 1931, the statute was again amended so as to establish a master's office for Dillon County by election every two years. Likewise for Horry County with a special provision for his fees to be 'fixed specially by the presiding judge of the circuit for Horry County,' etc. Various other masters' offices have been created and abolished.

"By amendment, special provisions were made for masters in Greenville and Greenwood Counties. In some counties they may practice law; in some they cannot. Some can practice in only civil cases; some in both criminal and civil. Again, some may practice 'on the law side of the Court of Common Pleas and of the Supreme Court and of the Probate Court.' Special provision is made for certain masters

to pay over unclaimed funds to the respective county treasurers.

"As to the compensation allowed, the various counties have special provisions, which have been changed from time to time. There is no general law in South Carolina affecting the office of master; nearly every county, having a master, works under a different system.

"In view of the various and many special provisions in the statutes in respect to the particular counties, I do not see how it can be maintained that the same could be covered by a general law. It necessarily takes a special law in the case of each county having a master, if any change is to be made in respect thereto. The subject treated in Act No. 646 (1932), is not susceptible of being covered by a general law in my opinion, and, therefore, the Act is constitutional so far as it affects statutory officers."

We think it apparent from an examination of the ▮ Act creating the office of Master, and the various amendments of the Act, that it was the intention of the Legislature to meet and satisfy different conditions in the various counties calling for special treatment. Changes were needed and were made in various counties from time to time in respect to Masters, their duties, their compensation, and the conduct of their offices. In some of the counties the office is held by attorneys, in some they are filled by laymen. It has been found that some counties do not need a Master; in some it is found that the Judge of Probate can perform his own duties and in addition those of a Master. The office of master is a special office, created by special Act, to be controlled and regulated by special Acts as the occasion therefor arises in any particular county. The Legislature can create the office or abolish it at will.

It seems to be only reasonable to conclude, in view ▮ of what we have pointed out, that the Legislature has not abused its discretion nor exceeded its constitutional power in enacting a special law dealing with the

compensation of the Richland County Master. The fact that the Legislature framed the Act in question as it did is evidence of its belief that a general law could not be made applicable, and as stated, we are not justified in interfering with the Act on constitutional grounds, except where the infraction is clear, palpable, and plainly unconstitutional. The most that we can say is, that it is doubtful if a general law, even if one could be framed, would be adequate and suitable to accomplish the purpose which the Legislature had in view, and we must, therefore, resolve the doubt in favor of the validity of the Act.

The appellant cites the cases of *Salley v. McCoy, supra; Holt v. Calhoun,* 175 S. C., 481, 179 S. E., 501, and *Williamsburg County v. Graham,* S. C., 196 S. E., 547, as supporting his contention.

Care was taken in the foregoing cases to expressly limit the effect of the decisions to the particular facts involved. And it was very clearly shown in those cases that not only could a general statute be made applicable, but that such a general law had actually been passed affecting the compensation of the officers whose compensation was in question.

It is likewise suggested that the Legislature conclusively demonstrated its knowledge that the Act in question was special legislation covering a subject susceptible of being covered by a general law, by submitting to the people the constitutional amendment, which was subsequently ratified, providing that the General Assembly may enact local or special laws fixing the amount and manner of compensation to be paid to the county officers of the several counties. We do not think this argument is convincing. In our view, the submission of the constitutional amendment referred to proves nothing more than a desire on the part of the Legislature to obtain constitutional authority which would permit special legislation as to those county officers whose compensation could be provided for by general laws.

The amendment was not necessary with reference to the office of master, as we have attempted to point out.

The appellant further contends that the Act is unconstitutional in its application to certain of the officers therein named, and therefore it is unconstitutional as to all.

One of the elementary doctrines of constitutional law is that one who invokes the power of the Court to declare an Act of the Legislature to be unconstitutional must show not only that his rights are affected, but must also show that the Act is unconstitutional as to him. The Court will refuse to determine whether or not a legislative Act is constitutional as to persons who are not shown by the agreed case to be affected. 11 Am. Jur., Sec. 111, page 748.

A party cannot be permitted to harass others and take the time of the Courts in litigating matters in which they have no interest, and for this reason, if the provisions of the Act under immediate consideration are of such a character as that it can stand as to the appellant, while it might fail as to the other county officers of Richland County, we will not stop to inquire whether it is or is not valid as to the latter.

The principle that a statute may be constitutional and valid in part and unconstitutional and invalid in part is generally recognized. The rule is that where a part of a statute is unconstitutional, if such part is so connected with the other parts as that they mutually depend upon each other as conditions and considerations for each other, so as to warrant the belief that the Legislature intended them as a whole, and if they cannot be carried into effect, the Legislature would not have passed the residue independently of that which is void, the whole Act is void. On the other hand, where a part of the statute is unconstitutional, and that which remains is complete in itself, capable of being executed, wholly independent of that which is rejected, and is of such a character as that it may fairly be

presumed that the Legislature would have passed it independent of that which is in conflict with the Constitution, then the Courts will reject that which is void and enforce the remainder. *Bramlette v. Stringer,* 186 S. C., 134, 195 S. E., 257; *Gillespie v. Blackwell, supra; Henderson v. Mc-Master,* 104 S. C., 268, 88 S. E., 645; *Carolina Glass Co. v. State,* 87 S. C., 270, 69 S. E., 391; *State v. Platt,* 2 S. C., ,150, 16 Am. Rep., 647.

It seems clear that an elimination of certain officers as to whom the Act might be deemed unconstitutional and leaving the provision as to the Master would not render the Act incomplete, but would give effect to the Legislative intent, certainly in part. The constitutional part of the Act relating to the office of master is entirely capable of being severed from what is alleged to be the unconstitutional part so that each part may be read and may stand by itself.

The lower Court limited its decision to the office of master, without concerning itself with the constitutionality of the other provisions of the Act. And of course our opinion is confined within the same limits.

As we have heretofore indicated, we think that the unconstitutionality of the Act insofar as it affects the office of master does not appear beyond a reasonable doubt, and we therefore affirm the judgment of the lower Court.

Judgment affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES BONHAM and BAKER concur.

MR. JUSTICE CARTER did not participate on account of illness.