## 15130

SANSING v. CHEROKEE COUNTY TOURIST CAMP BOARD
*ET AL.*

(10 S. E. (2d), 157)

February, 1940.

8

*Messrs. C. T. Graydon* and *John Grimball,* for appellants,

*Messrs. Dobson & Dobson* and *S. M. Wolfe,* for respondents,

July 18, 1940.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

These two 'cases involve identical issues. In each action the plaintiff challenges the constitutionality of an Act of the General Assembly (Act No. 248, Act June 9, 1939, Acts of 1939, 41 St. at Large, 402), which creates the Cherokee County Tourist Camp Board. The plaintiffs seek to have the board permanently enjoined from enforcing the provisions of the Act, and are appealing from a judgment of the Circuit Court holding the Act to be constitutional, and denying the injunction.

The appellants own separate tracts of land in Cherokee County, upon which they have erected cottages for the purpose of operating tourist camps. Under the terms of the legislative Act referred to they applied for an operator's license to conduct a tourist camp, which was refused. The matter was heard before the Circuit Court upon the verified petition of the plaintiffs, and the answer, return, and certain affidavits filed by the defendants.

It is admitted that the Act creating the Cherokee County Tourist Camp Board is a local or special Act which relates solely to the County of Cherokee. By its provisions the board is composed of the foreman of the grand jury, the sheriff, and the county physician. It provides that subsequent to July 1, 1939, no person, firm or corporation shall maintain, operate, or own any tourist camp or roadhouse in the county without first obtaining from the board a license so to do; that application for such license shall include the name of the owner of the property, the name of the manager or operator, the general nature of the business to be conducted, and such other information as the board may require. If the application is approved the license is issued by the Clerk of Court for Cherokee County upon the recommendation of the board upon payment of a fee of $10.00 by the applicant. The Act makes it mandatory upon the board to revoke the license of any tourist camp or roadhouse for any reason in addition to those specified in the Act which in the opinion of the board justifies such action.

Section 5 provides that no license shall be·issued to any operator or manager of such roadhouse or tourist camp who has been convicted of violating the liquor law within the previous year, and requires that each employee shall submit to a physical examination once each month and possess a health certificate. And further provides that no license shall be issued to any operator until his establishment shall have been equipped with running water, adequate sewer disposals, and such other sanitary facilities as the board might see fit to require; no license shall be issued to an operator who permits liquor to be stored, sold or drunk on the premises. Section 6 provides that the licensee shall be required to keep the place of business and premises in a healthful and sanitary condition and operate said place in a decent, peaceful, orderly and lawful manner. Registration of all persons obtaining accommodations at the tourist camps is required, Section 6 (a). Section 7 provides penalties for violation of the Act within the jurisdiction of magistrate's Courts.

The appellants assail the constitutionality of the Act as being in contravention of Article III, Section 34, Sub-section 9 of the Constitution, which prohibits the enactment of a special law where a general law can be made applicable. The Act can be sustained, of course, only upon the theory that a general law with statewide effect cannot be made applicable.

It is firmly settled in this State that while it is primarily for the Legislature to decide whether a general law can be made applicable in any specific case, the question is ultimately a judicial one, in solving which the Courts will give due consideration to the opinion of the Legislature. *Gillespie v. Blackwell,* 164 S. C., 115, 161 S. E., 869; *Townsend v. Richland County,* 190 S. C., 270, 2 S. E. (2d), 777. In our opinion, after a careful examination of the Act under attack, in the light· of our decided cases, there is no doubt but that the Act violates the Constitution, in that it is a special law where a general law can be made applicable.

The Court in *Sirrine v. State,* 132 S. C., 241, 128 S. E., 172, 175, quoted with approval from Freeman's note in 93 Am. St. Rep., 111: "A law is not constitutional if it confers particular privileges, or imposes peculiar disabilities or burdensome conditions in the exercise of a common right upon a class of persons arbitrarily selected from the general body of those that stand in the same relation to the subject of the law. The Legislature may classify, for the purpose of legislation, if some intrinsic reason exists why the law should operate upon some and not upon all, or should affect some differently from others, but this classification must be based upon differences which are either defined by the Constitution, or are natural or intrinsic, and which suggest a reason that may rationally be held to justify the diversity in the legislation. It must not be arbitrary, for the mere purpose of classification. The class must be characterized by some substantial qualities or attributes, which render such legislation necessary or appropriate for the individuals of the class."

That the Act creating the Cherokee County Tourist Camp Board runs counter to the constitutional provision prohibiting special legislation, we think is inescapable. One of the manifest objects of that instrument was to eradicate that species of legislation involving a multiplicity of laws, and substitute in lieu of it general laws whenever it was possible to do so. "The evil sought to be remedied was the great and growing evil of special and local legislation." *State v. Hammond,* 66 S. C., 219, 44 S. E., 797, 799.

Speaking to the same point the Court said, in *Tisdale v. Scarborough,* 99 S. C., 377, 83 S. E., 594, 595: "There had grown up in the General Assemblies of the entire Union a disposition for legislation by delegation. That kind of legislation was deemed pernicious; it lacked the settled consideration and consent of the lawmaking body; it evaded statewide responsibility; it encouraged local activity; it dis-

couraged the attrition of minds and the consideration of those problems which make for a wise public policy. The ninth paragraph was the fruit of this large conviction of the convention."

In the case at bar it is not shown that the operation of a tourist camp or roadhouse in Cherokee County differs in any respect from the operation of a tourist camp or roadhouse in any other section of South Carolina. It is suggested in the Circuit decree, by way of differentiation, that the tourist camps of the appellants are located on Highway No. 29, which traverses Cherokee County, which highway carries a great volume of interstate traffic. And it is said that this would contribute to a character of itinerant patronage at such camps which would not be common in all respects to similar camps located elsewhere in the State, and would, therefore, justify more rigid police regulations than would probably be required in more favorable environs. But Highway No. 29 carries the same tide of traffic through the neighboring county of Spartanburg, and through the counties of Greenville and Anderson. We are unable to perceive any rational basis for differentiation between tourist camps in Cherokee County and tourist camps in the other counties named which would justify diversity in legislation. There are other interstate highways running through the State especially attractive to tourists, and crossing numerous counties, namely, No. 1, running through the counties of Marlboro, Chesterfield, Kershaw, Richland, Lexington, Saluda, and Aiken. The counties of Horry, Georgetown, Charleston, Colleton, Jasper and Beaufort are crossed by U. S. Highway No. 17. Likewise U. S. Highways Nos. 15 and 15A run through Colleton, Dorchester, Orangeburg, Clarendon, Sumter, Lee, Darlington and Marlboro. There are other improved highways in the State, too numerous to mention, upon which are located tourist camps and roadhouses. Unless the Court disclaims knowledge possessed by all other citizens of the State it must take judicial notice of the fact

that tourist camps and roadhouses are located and in operation in practically every county of South Carolina. No intrinsic reason appears why the law should operate upon some and not upon all, or should affect some differently from others. That a general law can be made applicable has been demonstrated. A law has been passed (Section 5002, Code of 1932), which vests the State Board of Health with power to adopt and file rules and regulations with reference to health and sanitary conditions in all tourist camps in the State. The regulations are found in the Acts of 1938, 40 St. at Large, at pages 2927 and 2931, Article No. 4.

In *State v. Hammond, supra,* in which the Court considered the constitutionality of an Act making it a misdemeanor to fail to remove a dam from across a running stream in certain counties, after forty-eight hours' notice to remove, Mr. Justice Jones made these pertinent remarks: "What possible reason can be assigned for making it a misdemeanor to so obstruct a running stream in Abbeville, while it would not be a misdemeanor to obstruct a running stream in the adjoining County of Greenwood? Why should running streams in Lancaster be so obstructed with impunity, while it is a crime to do a similar act in York or Chester? A dam across a running stream in any part of the State would necessarily obstruct the flow of water and sand in said stream, and would ordinarily cause some damage to lands subject to the backwater, and would as likely endanger the health of the community in one county as well as in another. In every county the same kind of injury or danger would necessarily or ordinarily result from such obstructions, even though it be admitted that the degree of the injury or danger may not be the same. The nature of the conduct sought to be made punishable as crime is not such as to make it punishable in one part of the State and not in another. We speak of crimes against the State, and not mere municipal offenses. If it be said that conditions in the included counties are peculiar, and seem to call for penal legislation of the kind mentioned,

still a general law could be made applicable to the whole State, so as to operate wherever such conditions exist, and whenever similar or like conduct takes place. No one would think for a moment that it would be competent for the Legislature to make the burning of a tobacco warehouse or barn punishable as arson, when committed in Darlington or Sumter or Florence, because the conditions in those counties make such legislation desirable, and then provide no punishment for like acts, should they occur in other counties in this State, even though the conditions there are such as to render such burning very improbable."

In *Barfield v. Stevens Mercantile Co.,* 85 S. C., 186, 67 S. E., 158, 159, a statute providing for a cotton weigher at Bethune and Pickens was declared unconstitutional as being special legislation, the Court saying : "But if there be such a public interest as distinguished from a public use as would uphold such legislation, if general, the argument against the statute as special and local is strengthened, for no reasonable ground can be suggested why such legislation cannot be made general so as to apply to all markets in the State where cotton is sold to a specified extent. Is there any public reason why private weighing of cotton should be unlawful at Bethune, S. C., while perfectly lawful at other similar markets?  *  *  * "

Other instances of unconstitutional special laws where a general law could be made applicable are shown in *Tisdale et al. v. Scarborough et al., supra*; *State v. Ferri,* 111 S. C., 219, 97 S. E., 512, and *Gillespie v. Blackwell, supra.* While appreciating the laudable objectives of the Act in question we have no alternative but to declare it violative of the Constitution.

The appellants have attacked the constitutionality of the Act upon other grounds, which are not necessary to be considered. The Act creating the Cherokee County Tourist Camp Board being unconstitutional, in our opinion, for the

reasons assigned, the appellants are entitled to a permanent injunction against its enforcement.

Judgment reversed and case remanded.

MR. CHIEF JUSTICE BONHAM, MESSRS. JUSTICES BAKER and STUKES, and MR. ACTING ASSOCIATE JUSTICE L. D. LIDE concur.