15267

GILLESPIE v. PICKENS COUNTY

(14 S. E. (2d), 900)

218

The Circuit Decree follows:

Jesse D. Gillespie, the plaintiff herein, is the county treasurer of Pickens County, and has held that office since July 14, 1925. Hence under the general law of the State, Section 2854, Code 1932, he was entitled as such treasurer to the sum of $1.00 for each tax execution or warrant issued by him, the same to be paid by the defaulting taxpayer. However, there were certain special Acts passed relating to Pickens County which are embodied in Section 4728, Code 1932, wherein after stating the salaries of county officers, including the treasurer, it is provided that all fees shall be paid into the treasury of the county; and the execution fees which were due the treasurer under the general law were received by the county and used as a part of its ordinary funds.

This action was commenced on February 2, 1939, by the treasurer to recover his execution fees; and the plaintiff prays judgment against the defendant for $1.00 for each tax execution issued by him as treasurer and collected from the delinquent taxpayers "as will be shown by the public records of Pickens County." The defendant answered, setting up numerous defenses, including the statutes of limita-

tions, and denying all liability. By agreement of counsel the cause was by order referred to E. P. McDaniel, Esq., Clerk of this Court, as Special Referee, for the purpose only of taking the testimony. Pursuant to this order the testimony was taken and reported and includes an audit showing the amount of the execution fees and the years wherein they were collected.

By agreement of counsel the cause came on to be heard before me in open Court in Greenville, on December 2, 1939, and after argument of counsel was taken under advisement.

In addition to the oral arguments very helpful briefs were filed by counsel for the respective parties, and later at my request additional briefs were filed on a certain point.

The entire amount of the execution fees collected and received by the county for the period set forth in the complaint is $13,835.00; but of this amount the sum of $5,520.00 was collected more than six years prior to the commencement of this action, and hence as to this amount the bar of the six-year statute of limitations is complete. Indeed, it is not controverted that the cause of action for these fees accrued more than six years before the commencement of this action; and the six-year statute of limitations, as contained in Section 388, Code 1932, was clearly controlling, because this is an action upon an obligation or liability, express or implied, and obviously does not come within the provisions of Section 387, the twenty-year statute.

It also appears from the evidence that there is some question about the regularity of the issuance of these particular executions, or some of them, but that we need not consider, since the bar of the statute is sufficient to eliminate these items, which would leave then for consideration the sum of $8,315.00. But there is another deduction which should also be allowed, to wit, the sum of $630.00, representing collections on executions for delinquent taxes for the year 1937, and these executions according to the evidence were received

by the tax collector on June 13, 1938, subsequently to the Act of the General Assembly, approved and effective May 6, 1938, Acts, 1938, No. 909, page 1826, which admittedly is a valid and constitutional Act, having been acted after the approval of the 1935 amendment to the Constitution, allowing special laws with reference to the amount and manner of compensation of county officers; and this Act provided that fees such as those in question here should be paid into the treasury of Pickens County for credit to its ordinary funds, and that in lieu of the retention of such fees, etc., the officers of the county should be paid such salaries as may be prescribed by the General Assembly and annually appropriated by it for such purpose. Manifestly then the sum of $630.00 should be deducted which leaves a net amount of $7,685.00, actually in dispute herein.

It is, of course, admitted that the special Acts relating to Pickens County, embodied in Section 4728, Code 1932, are unconstitutional, null and void, under the provisions of Article III, Section 34, of the Constitution, as it stood prior to the amendment of 1935. See *Salley v. McCoy,* 182 S. C., 249, 189 S. E., 196, and the numerous cases following this decision. Hence the plaintiff is entitled to recover the sum in question, unless he is barred from doing so by reason of the statute of limitations enacted by the General Assembly, approved May 9, 1938, Acts, 1938, No. 947, page 1893. This Act provides that no action against the State of South Carolina or any county therein shall be brought by any past, present or future officer or employee of the State or county for the recovery of any salary, fees, costs, commissions, mileage or other charges or obligations, etc., on account of services rendered, where the cause of action shall accrue after the approval of this Act, unless the action be brought within the period of one year from the date of the accrual of the right of action, *provided* that in all cases where such right of action shall have accrued on or prior to the effective date of this Act (May 9, 1938) and is not barred by the

statute of limitations in effect prior to said date, the claimant is required within a period of not exceeding six months to bring suit upon such claim *and not thereafter*. But there is a further proviso to the effect that the provisions of the proviso relating to a cause of action which accrued on or prior to the effective date of the Act shall not change or affect the provisions of another Act of the General Assembly approved March 17, 1938 (Acts, 1938, No. 760, page 1631). The Act of May 9, 1938, contains the usual repealing clause, except that it states that the provisions of this Act shall not be construed as repealing any of the provisions of the Act approved March 17, 1938.

If the statute of May 9, 1938, is valid and constitutional, the plaintiff's cause of action would be completely barred, because it had accrued prior to May 9, 1938, and no action was brought within six months thereafter, the instant case having been commenced as above stated on February 2, 1939, more than eight months after May 9, 1938. The constitutionality of this Act, however, is attacked by counsel for the plaintiff, it being contended by them that the Act is in violation of Article III, Section 34, Subdivision IX, of the State Constitution, to the effect that where a general law can be made applicable no special law shall be enacted; and that it is also in violation of the equal protection and due process clauses of the State Constitution (Article I, Section 5), and of the Federal Constitution (the Fourteenth Amendment and Article I, Section 10).

There are several specific grounds stated in support of these constitutional objections, but since I am of opinion that the statute is unconstitutional, in so far as it relates to claims against counties which had accrued on or before May 9, 1938, because it applies only to forty-two counties of the State, this is the only particular ground which will require any extended consideration.

The Act of May 9, 1938, definitely excludes from its operation the four largest counties of the State (in popula-

tion), to wit, Charleston, Greenville, Richland and Spartanburg. For as will be seen by reference to the Act of March 17, 1938, this specific statute provided that no action against any county of the State having a population as shown by the United States official census of 1930 in excess of 85,000, or against any county of the State which may be shown by any future such census to have a population in excess of that number, shall be brought by any former, present or future officer, including county auditors and county treasurers, etc., on account of any claim for salary, wages, fees, costs, etc., unless the action shall be begun within one year from the date of the accrual of the right of action; *provided,* that in all cases where such right of action shall have accrued on or prior to the effective date of the Act (March 17, 1938), and the same is not barred under the present statute of limitations, an action may be brought within a period of three months from the effective date of this Act *but not thereafter.* The United States official census for 1930 shows that the following counties had a population of 85,000 or more, to wit, Charleston 101,050, Greenville 117,009, Richland 87,-667, and Spartanburg 116,323. Hence by its terms the Act of March 17, 1938, relates to these four counties only, with the provision that counties hereafter coming within that population class will automatically be brought under the Act.

Hence it is clear beyond a peradventure that the Act of May 9, 1938, by its express terms does not relate to the four counties of Charleston, Greenville, Richland and Spartanburg, but applies only to the remaining counties, and also to the State of South Carolina itself as a political unit.

Does then this Act violate the provisions of the Constitution relating to special Acts? Manifestly a statute of limitations is one where a general law can be made applicable, in the very nature of the case. Of course, this does not mean that there must be one statute of limitations for all cases of whatsoever nature or kind, for obviously the Legislature has the right to classify causes of ac-

tion and allow different periods of limitation. It will be seen by reference to the statutes of limitations contained in Sections 386 to 396, both inclusive, Code 1932, there are several classifications ranging from a period of one year to a period of twenty years. Certainly any such classification must have a sound and reasonable basis, and it seems to me that the Legislature would clearly have the right to classify claims of officers for fees and salaries, but I can conceive of no valid reason whatever for excluding from the operation of such a law claims against four of the counties of the State. The exemption is based solely upon the fact that the population of each of these four counties exceeds the arbitrary figure of 85,000. But the matter of population cannot conceivably have any logical relationship to such a cause of action. It seems to me that it might be argued with as much reason that claims against corporations having a capital stock exceeding the sum of $85,000.00 should be barred in a lesser period than like claims against other corporations. In the case of *State v. Ferri,* 111 S. C., 219, 97 S. E., 512, a decision by the Court *en banc,* the Court had before it an Act of the General Assembly prohibiting traffic in seed cotton or unpacked lint cotton within counties containing cities of 50,000 inhabitants or more, between August 1st and December 31st of any year; and it was held that this was special legislation and hence unconstitutional for the obvious reason that the attempted classification of counties on the basis proposed was unreasonable although a classification on the basis of population would be valid in some cases, that is to say, where population has some natural or logical relation to the purpose of the legislation. *State v. Berkeley,* 64 S. C., 194, 41 S. E., 961; 16 C. J. S., Constitutional Law, § 506, p. 1005. See also *Tisdale v. Scarborough,* 99 S. C., 377, 83 S. E., 594, and *State v. Hammond,* 66 S. C., 219, 44 S. E., 797.

In the case of *Gasque, Inc., v. Nates,* 191 S. C., 271, 2 S. E. (2d), 36, 41, the Court adopted the able decree of the

Circuit Judge, from which I quote the following with reference to the power of the Legislature to make a classification of its citizens: "It is true that the Legislature has the power in passing a law to make a classification of its citizens and the constitutional provisions are not violated by such classification if the law as passed is applicable alike to all persons belonging to the given class, but the Courts of the State and of the United States have always held that such classification cannnot be made arbitrarily, but must rest upon some difference which bears a reasonable and just relation to the Act in which the classification was proposed."

It may be observed that the Act under consideration in this case was declared unconstitutional on the ground among others that certain terms of the Act did not apply to towns, villages and communities of less than a certain population.

In the case of *Dean v. Spartanburg County,* 59 S. C., 110, 37 S. E., 226, 228, the Court declared an Act relating to the dieting of prisoners as local and special because a great number of the counties of the State were excluded from its operation. This is a leading case on this subject and has been cited in many later decisions. The Court there said: "In order that a law may be general, it must be of force in every county in the State, and, while it may contain special provisions making its effect different in certain counties, those counties cannot be exempt from its entire operation."

I do not overlook the fact that it is provided in Article III, Section 34, of the Constitution, that nothing contained in that section should prohibit the General Assembly from enacting special provisions in general laws, and it is often a matter of difficulty to determine what is a special provision in a general law; but as our Court has definitely held, this cannot be construed so as to nullify the constitutional purpose to secure general laws having uniform operation throughout the State, except in those cases where there is some logical basis and sound reason for special legis-

lation. *State v. Burns,* 73 S. C., 194, 52 S. E., 960; *Gamble v. Clarendon County,* 188 S. C., 250, 198 S. E., 857.

The four counties of Charleston, Greenville, Richland and Spartanburg are entirely excluded from the operation of the Act of May 9, 1938, but the suggestion is made that the two statutes of limitations passed in 1938, to wit, the Acts of March 17, 1938, and May 9, 1938, having been passed at the same session, and the earlier Act being approved in the later Act, the two should be construed together, and that if so construed they may be held to be valid because applying to the entire State, the earlier Act merely providing for a shorter period, to wit, three months (instead of six months) for bringing suit on claims which had accrued on or before the effective date thereof. Or to put it another way, that the Act of March 17, 1938, might be construed as containing special provisions within the general law of May 9, 1938. But this theory is unsound and untenable, for it brings us back to the fundamental question as to whether a reasonable classification can be based in a matter of this kind on population. For instance, could the treasurer of Greenville County be barred upon such a cause of action for fees, while the treasurer of the adjoining County of Pickens would not be barred in the same period upon a precisely similar claim? It seems to me that to state the question is to answer it in the negative.

It is quite true that it is primarily a legislative question as to whether a general law can be made applicable, but ultimately it is a judicial question, for although due consideration must be given to the legislative judgment, the final responsibility rests upon the Court. *Gillespie v. Blackwell,* 164 S. C., 115, 161 S. E., 869, 872.

It is, moreover, a thoroughly sound principle that where a part of a statute is constitutional and a part unconstitutional, the former may be sustained in a proper case although the latter is stricken out. Oddly enough

this principle is stated in the case of *Gillespie v. Blackwell, supra,* just cited; and the plaintiff in the instant case was the plaintiff in that case. The opinion is a well-considered one, delivered by Mr. Justice Stabler, wherein he says: "Where a part of a statute is constitutional and a part unconstitutional, the former may be sustained in proper cases while the latter falls. Such a result, however, depends upon certain conditions, namely: (1) That the constitutional part of the Act is capable of being severed from the unconstitutional part so that each part may be read and may stand by itself; (2) that the striking out of the unconstitutional part will not destroy the apparent intention of the Legislature in its enactment of the law; and (3) that it is not necessary to insert words or terms to separate the constitutional part from the unconstitutional part and to give effect to the former alone."

Applying the principles laid down in this case, is it possible to strike from the Act of May 9, 1938, the clauses referring to the earlier Act of March 17, 1938, so that the Act may be sustained as applying to all the counties in the State? I apprehend that this cannot be done, with reference to claims against counties which had accrued on or before the passage of the Act, for the simple reason that the apparent, or rather manifest, intention of the Legislature in the enactment of the law would thereby be destroyed. The Act of May 9, 1938, not once but twice, in definite terms declared that it should not be construed as changing or affecting the provisions of the Act of March 17, 1938. This is not only said in the main section of the Act, but it is repeated in the repealing clause. In the light of these two definite expressions of the legislative intention I see no possible way to hold that the Act is constitutional as applied to claims against a county which had accrued on or before the passage of the Act. To do so would be to write an Act for the Legislature, and in view of these express provisions in the Act it should be assumed that if they had not been inserted the Act would not have been adopted by the General

Assembly. *Gilreath v. Greenville County,* 63 S. C., 75, 40 S. E., 1028.

In the recent case of *Townsend v. Richland County et al.,* 190 S. C., 270, 2 S. E. (2d), 777, 781, the Court says: "The principle that a statute may be constitutional and valid in part and unconstitutional and invalid in part is generally recognized. The rule is that where a part of a statute is unconstitutional, if such part is so connected with the other parts as that they mutually depend upon each other as conditions and considerations for each other, *so as to warrant the belief that the Legislature intended them as a whole, and if they cannot be carried into effect, the legislature would not have passed the residue independently of that which is void,* the whole act is void." (Italics added.)

I am further of opinion that the Act of May 9, 1938, in so far as it relates to claims against counties which had accrued on or before the passage of the Act, is violative of the equal protection and due process clauses of the State and Federal constitutions, because such clauses while permitting legislative classification clearly require that the same be founded in reason. *Windham v. Pace,* 192 S. C., 271, 6 S. E. (2d), 270. As I have already indicated, I think it would be entirely proper for the Legislature to classify claims of this character, but the Act making such classification must apply to all persons coming within the class, while here the Act excludes those whose claims are against certain of the counties of the State.

Having reached the conclusion for the reasons aforesaid that it is the duty of the Court to declare the Act of May 9, 1938, unconstitutional as applied to claims against a county which had accrued on or before the passage of the Act; although well aware that it is always a matter of regret to strike down an enactment presumably speaking the legislative will, and the same is never done where it can be avoided within the established rules of law; it is unnecessary to consider the other objec-

tions made to the constitutionality of the Act in question. I may say, however, that in my opinion if the Act had been so drawn as to apply to all the counties in the State it should be held valid in all respects. As above stated, I think the classification of claims of this character is entirely reasonable, including the allowance of a shorter period of limitation than that allowed for many other kinds of cases. Indeed under the present law relating to ordinary claims against counties they will be barred pursuant to Section 3873, Code 1932, unless filed during the fiscal year in which contracted or the next year thereafter; and the validity of this section has never been, and I do not think could be successfully, questioned.

Furthermore, it is well settled that the Legislature, without violation of the guaranties of due process of law, may reduce the period in which actions may be brought and may make such reduction applicable to existing causes of action "subject, however, to the conditions that it may not entirely take away the right to sue, nor so unreasonably shorten the period as practically to take away all remedy." 16 C. J. S., Constitutional Law, § 615, p. 1238. It is earnestly argued that the period of six months allowed by the Act of May 9, 1938, would unreasonably shorten the period, but I do not concur in this view. See 17 R. C. L., 679.

A very admirable statement of the law on this subject will be found in our own case of *Stoddard v. Owings,* 42 S. C., 88, 20 S. E., 25, 26, the opinion in which was delivered by Chief Justice McIver; and he says: "For there can be no doubt that the legislature may, without any violation of constitutional provisions, change the periods prescribed as a limitation to actions, either by extending or reducing the periods previously prescribed, as well in reference to antecedent as subsequent contracts. The rule is well stated in *Bigelow v. Bemis,* 2 Allen [Mass.], 496, in these words: 'It is well settled that it is competent for the legislature to

change statutes prescribing a limitation to actions, and that the one in force at the time of suit brought is applicable to the cause of action. The only restriction upon the exercise of this power is that the legislature cannot remove a bar which has already become complete, and that no new limitation shall be made to affect existing claims without allowing a reasonable time for parties to bring actions before their claims are absolutely barred by a new enactment.' "

There is only one other point raised by counsel for the defendant which requires any consideration, and that is the claim set up in the answer to the effect that during certain years the plaintiff caused Pickens County to pay for clerical help in his office sums amounting in all to $1,085.66, and that this amount should be deducted from the fees claimed by him. The evidence is to the effect that at the treasurer's request some clerical assistance was rendered to him during four years, although he testified that he supplemented the salary of the helper a part of the time. There is, however, no evidence that the allowance of clerical assistance by the county during these years had any relationship whatever to the execution fees payable to the treasurer by defaulting taxpayers under the general law of the State. I can find no element, either of waiver or of estoppel in this respect, which can be inferred with any degree of reason from the evidence before me. *Ridgill v. Clarendon County,* 192 S. C., 321, 6 S. E. (2d), 766.

This claim is set up in the answer as a defense and also as a counterclaim, and it appears that no reply was filed to the counterclaim. However, the claim is not properly a counterclaim but really is a plea of partial payment; and for the reasons above stated I do not think it can be allowed. It is, therefore,

Ordered, adjudged and decreed that the plaintiff above named, to wit, Jesse D. Gillespie, have judgment against the defendant above named, to wit, Pickens County, for the

sum of Seven Thousand, Six Hundred and Eighty-five ($7,-685.00) Dollars, together with the costs of this action.

*Mr. W. A. Bull* and *Mr. B. A. Chapman,* for plaintiff, appellant-respondent,

*Messrs. Mann & Mann,* for defendant, appellant-respondent,

*Mr. W. C. Mann,* in supplemental brief of defendant appellant-respondent,

May 27, 1941.

The opinion of the Court was delivered by MR. ACTING ASSOCIATE JUSTICE T. S. SEASE.

The decree of Honorable L. D. Lide, Judge of the Twelfth Judicial Circuit, correctly decides all issues properly before the Court in this case, and is hereby adopted and will be reported as the opinion of this Court.

Judgment affirmed.

MR. CHIEF JUSTICE BONHAM and MR. JUSTICE BAKER concur.

MESSRS. JUSTICES FISHBURNE and STUKES concur in part and dissent in part.

MR. JUSTICE STUKES (dissenting in part) :

With the excellent circuit decree I am in entire accord except as to the disposition of the question of the constitutionality of Act No. 947 of 1938, approved May 9, 1938, which question is preserved here by defendant's Exception I; and I agree with the conclusions below as to the various

grounds of attack except the one which was sustained, to wit, that the Act is invalid because it is in conflict with Subsection 9, Article III, Section 34, of the State Constitution, in that it is a special Act purportedly applicable where a general Act can be made applicable.

For reasons indicated in the decree, Act No. 760 passed at the same session of the General Assembly and approved on March 17, 1938, is unconstitutional and the question thereof is necessary in the consideration of this case. By its terms it provided that suits in the nature of this in certain counties only should be barred as to causes of action existing upon the date of its approval within a period of three months and as to similar causes of action arising subsequently to the approval of the Act, they would be barred after one year.

Then there came from the same General Assembly its Act No. 947, approved by the Governor on May 9, 1938, general and statewide in its title, terms and effect, except for the provisos hereinafter mentioned, that such existing causes of action should be barred in six months from its effective date and causes accruing after its approval in one year.

As pointed out in the decree, Act No. 947 contains a proviso at the end of Section 1 that it shall "not change or affect the provisions of" Act No. 760; and in the repealing clause is a similar provision, an exception to the usual general repeal being "any of the provisions of" Act No. 760.

Thus it will be noted that the only difference in the terms of the Acts is the period of limitation of actions upon existing causes, such being in the patently unconstitutional Act No. 760 three months, and in the subsequent Act No. 947 six months. The limitation upon suits upon causes of action accruing after the respective dates of approval is identical, to wit, one year. Thus the legislative intent to be gathered from the consideration of the two Acts of the same session of the same Legislature is that in the several counties only affected by the terms of Act No. 760 suits upon existing causes

should be barred in *three months* after its effective date and in all of the rest of the counties, affected by Act No. 947, such limitation should be *six months*. As to the limitation of actions upon causes accruing after approval of the Acts the provisions are the same, hence the intent which actuated the passage of these provisions is identical, that is to establish a limitation of one year.

In the circuit decree it was well reasoned in the consideration of the principle that the unconstitutional portion of a statute may be stricken out in certain cases, that the tests established by this Court in the decision of *Gillespie v. Blackwell,* 164 S. C., 115, 161 S. E., 869, were fully met as to those tests there numbered (1) and (3). However, it was held that test (2), that the striking out of the unconstitutional part shall not destroy the apparent intention of the Legislature, was not met; and it was concluded, mistakenly I think, that the legislative intention in the passage of Act No. 947 would be destroyed by the upholding of the Act with the provisos above referred to deleted. It is said that it must be assumed that in view of the twice repeated provisos by which it was attempted to preserve the terms of Act No. 760, that the Act, No. 947, would not have been adopted by the General Assembly without the inclusion of them. The result was the striking down of the Act as unconstitutional and the application of the six-year statute of limitations of the Code of 1932.

With that I cannot bring myself to agree because it seems to me that the consideration of the various periods of limitation above adverted to leads inevitably to the conclusion that the General Assembly would have passed Act No. 947 without the provisos, for such would have so much nearer expressed the intent evidenced by the two Acts than would the voiding of Act No. 947 and the resulting reversion to the six-year limitation. The ascertainment of the legislative course that would have been followed must be largely derived from this comparison of the respective results.

In this connection it should be remembered as a practical matter that the single difference attempted in the Acts, between six months and three months limitation on causes accrued at the respective effective dates, has by lapse of time long since become academic and was so at the time of the commencement of this action, hence the legislative intent evidenced by the provisos in Act No. 947 *had run its course.* This is a very different factual situation from that ordinarily encountered and, I think, removed from this case the question of the constitutionality of the Act because of the provisos. The intended effectiveness of them had already come to an end by reason of their terms and the terms of the prior Act to which they referred.

Furthermore, the result here suggested is, I think, fortified by another pertinent consideration. The provisos in Act No. 947 refer to the preservation of the terms of the prior plainly unconstitutional Act No. 760, and were therefore a nullity; thus the provisos cannot be, and could not at any time have been, effective for any purpose; should they, then, be otherwise treated than ignored? And with them ignored, omitted from consideration, we have in No. 947 a complete and general Act, subject, as found by the Court below, to no other constitutional objection. Incidentally, it appears that the Act was originally so prepared, for the title refers to any (every) county, and the provisos were probably inserted as amendments during its course of passage. See *Stewart v. Woodmen of the World,* 195 S. C., 365, 11 S. E. (2d), 449.

In *State v. Burns,* 73 S. C., 194, 52 S. E., 960, this Court had under consideration an Act relating to the compensation of the Clerks of Court for the various counties, in which there was a proviso affecting only the Oconee clerk by which it was attempted to place him upon a basis of compensation entirely different from that of the clerks of the other counties. The proviso in question was held unconstitutional but it was said in the opinion that in view of the duty of the

Court to sustain the validity of an Act of the General Assembly insofar as it is possible to do so, the vice. (the invalidity of the proviso) was not sufficient to destroy the whole law because it was separable from the other provisions of the statute. Here, as pointed out above, the provisos are perfectly separable from the other provisions of the statute, Act No. 947 of 1938, and also as pointed out above were meaningless from inception in view of the unconstitutionality of Act No. 760 of 1938, to which they refer, and meaningless at the time of the commencement of this action for the additional reason of the effect of lapse of time.

That this sound and well-established rule of construction, requiring the striking out of separable unconstitutional provisos in otherwise general statutes, under the conditions set forth in *Gillespie v. Blackwell, supra,* is not out of accord with the law upon the subject in other jurisdictions is shown by reference to Cooley's Constitutional Limitations, 8th Edition, Vol. 1, page 360, and 11 A. J., 834, *et sequi.* Constitutional portions of statutes were recently applied in the decisions of this Court, and unconstitutional provisions disregarded, in *Townsend v. Richland County,* 190 S. C., 270, 2 S. E. (2d), 777, and *Windham v. Pace,* 192 S. C., 271, 6 S. E. (2d), 270.

This Court and its predecessors have said over and over again that a statute, a solemn enactment of the General Assembly, will be held unconstitutional and therefore invalid only when it is so clearly violative of the terms of the Constitution that there is no reasonable doubt thereof; doubts, uncertainties, are resolved in favor of the constitutionality, validity, of legislative Acts. *Townsend v. Richland County, supra,* and authorities there cited.

MR. JUSTICE FISHBURNE concurs.