THE STATE, EX REL. THOMPSON, HINE & FLORY, A
PARTNERSHIP, *v.* COUNCIL OF VILLAGE OF
BEDFORD ET AL.

(Decided June 23, 1930.)

*Messrs. Thompson, Hine & Flory,* for plaintiff.
*Messrs. Landfear & Baskin,* for defendants.

VICKERY, P. J.   In this action it is sought to have issued a writ of mandamus ordering the village of Bedford and, its council, the various members being named therein, and its clerk and treasurer, to issue a warrant in the sum of $5,200 payable to Thompson, Hine & Flory, the relators, attorneys, that amount being the compensation which had been allowed said firm by the common pleas court, first, in an order of $3,400 for the original trial of the action hereinafter

mentioned, and, second, in the sum of $1,800, for services performed by said Thompson, Hine & Flory, as lawyers in the Court of Appeals, to which court said original case had been carried, and also in the Supreme Court, to which court the case had likewise been carried by the defendant in the original action.

This suit in mandamus invokes the original jurisdiction of this court, and is of the utmost moment, and, in order to arrive at a correct understanding, it is necessary to go back to the litigation in the prosecution of which the attorneys earned or claimed to have earned the fees allowed them by the courts.

It seems that Bedford is one of the villages of Cuyahoga county, and is governed by a council and a mayor, and has various officers, one of which is a village engineer by the name of Bayard T. Wright. Prior to the beginning of the litigation out of which this suit arises, Bayard T. Wright had, in direct violation of law, and the council had, in direct violation of law, apparently in order to evade the law which provides that no officer of a municipality should be interested in any contract of the municipality, let certain contracts to Engineer Wright, and he in turn had employed as inspectors upon those contracts several of the various members of the then village council; and these members of the village council were on Wright's pay roll, and Wright, as engineer, was a contractor working for the village, ostensibly at least, although as engineer he was already on the pay roll of the village.

This matter had been going along for some period of time, and it was so flagrantly in violation of law that it aroused the antagonism of several of the citi-

zens of Bedford, among whom were Arthur H. Clark and John Freeman, who sought to stop this illegal practice and to recover back money which they assert had been illegally paid to the contractor Wright under this sort of an arrangement, which, on the surface, seemed to be collusive between the village council and Engineer Wright; so the village solicitor was asked by the two taxpayers on behalf of all the taxpayers to institute suit to recover the money which had been illegally paid to Wright under this sort of an arrangement. The solicitor refused to bring suit, whereupon the taxpayers employed the firm of Thompson, Hine & Flory, and themselves brought the action in the common pleas court of Cuyahoga county. The action was bitterly fought in all its angles, but the trial resulted in a verdict for the taxpayers on behalf of the village in the sum of $15,753.41. A motion for a new trial was made and overruled, and a judgment was entered upon this verdict. The common pleas court that tried the case thereupon allowed what it regarded as reasonable attorney fees for Thompson, Hine & Flory, in the sum of $3,400, which allowance of attorney fees was carried into the judgment. The defendant in the case below carried that case to the Court of Appeals, and it was heard by a foreign Court of Appeals sitting here by designation, and, after full argument and due consideration, that court affirmed the judgment of the common pleas court. Wright, the defendant, not being satisfied, carried the case to the Supreme Court, and it was admitted into the Supreme Court, and the Supreme Court, after full hearing, affirmed the judgment of the common pleas court and of the Court of Appeals

(119 Ohio St., 462, 164 N. E., 512) and afterwards refused the defendant a rehearing; and its mandate to the common pleas court directed the common pleas court to fix an additional fee for the counsel, which was ultimately fixed by the common pleas court in the sum of $1,800, so the $3,400 that had been allowed by the common pleas court originally, together with $1,800 that had been subsequently allowed for services performed by the firm in the Court of Appeals, and in the Supreme Court, made the sum total $5,200.

It is needless to say that this case was bitterly fought by the defendants through all the courts, and the attorneys representing the taxpayers so diligently and successfully pressed the claim of their clients that it resulted in the return to the village treasury of a sum in the neighborhood of $16,000, which had been wrongfully and illegally diverted therefrom.

Then comes a situation that is hardly to be paralleled in the history of litigation, because, after the battle had been fought successfully by the plaintiffs, and unsuccessfully by the defendant, through all the courts of the state, each court finding that the plaintiffs had the right to recover, and that the defendant had illegally drawn this money from the village treasury, it was sought by the council of the village and its officers, acting apparently in collusion with the defendant, to defeat the right of the attorneys to gain the usufruct of their service after they had so ably and conscientiously represented the taxpayers and recovered from its recalcitrant officer a large sum of money that had been illegally paid to him; it was sought, I say, by what appears to be

a collusive arrangement to defeat the right of the attorneys to gain the usufruct of their services. And so the council passed a resolution authorizing the clerk of the village to receive from Wright the sum of money which had been adjudged against him, and which stood as a judgment against him on the records of the Cuyahoga county courts, and to receipt the docket for such sum of money, thus releasing Wright from the necessity of paying into court the sum of money which had been adjudged that he should pay. It was sought by this process to defeat the right of an attorney's lien upon the funds realized, and the council thereafter refused to pay the money that had been adjudged by the courts to be due Thompson, Hine & Flory out of the proceeds which they had recovered for the taxpayers of the village, and continued thus to refuse the claim on the ground that it was public money, and that council could not pay public money out in that sort of a way—seeming to have lost sight of the fact of the illegal payment of public money in the first instance, which was recovered only by the hard work and industry of the firm of lawyers who are the relators in this suit. So, in order to recover the money which they had so richly earned, the lawyers were compelled to bring a suit in mandamus to compel the village to pay the money that was due them, there being no property that was subject to a levy.

The argument upon this suit has been extremely interesting, and the case is of such momentous concern to the entire public that the writer of this opinion has gone into details because of the importance of the litigation.

It is claimed, first, that there is no statute author-

izing a taxpayer's suit in cases like this; that is, no statute authorizing a taxpayer to bring a suit for the *return* of money which had been illegally paid out, even though the officer, whose sworn duty it is to perform such functions neglects and refuses to adhere to the request of a taxpayer, and that, inasmuch as there is no statute authorizing the suit, there can be no compensation for the attorneys who created a fund, no matter how large it may be.

We do not understand that to be the law. We are of the opinion that the common-law attorney's lien exists upon this fund, as it does upon any other fund that is realized by virtue of the work of the attorney, and, had there been no apparently collusive action upon the part of the council, the debtor, who is an officer of the village, and the clerk, this money would have been paid into court, and then undoubtedly the attorneys could have protected themselves and have had the clerk of courts issue a warrant to them for the amount of $5,200, as the journal entries provide.

But, as already stated, it apparently was the purpose to defeat the lawyers from recovering their richly earned fee, and now it is said that under no circumstances could they recover, because it is "public money," and there is no warrant for paying public money out in any such way. Well, one cannot help but wonder at the long neglect of the council of Bedford in learning that this was public money, and wonder at their not discovering it in the first instance, and, had not a couple of public-spirited citizens had the courage to bring this action, the public money that the courts find in the sum of about $16,000 would always have remained in the hands of those to whom it had been illegally paid.

There is a statute which authorizes the *enjoining* of the wrongful or illegal payment of public money, and, if the city solicitor refuses to bring such an action, it can be brought by a taxpayer, and, in the event of success, a taxpayer can have his counsel remunerated for the services performed.

Well, now, I apprehend it is just as important to recover back public money which *has been* illegally expended as it is that the expenditure shall be prevented in the first instance, and, if the services in preventing money from being illegally expended can be compensated, I see no reason why the like rule should not apply when money illegally expended has been recovered by a suit of the taxpayer, and no reason why the taxpayer's attorneys should not be compensated. Nay, I can go farther and say that to adopt such a rule as is advocated by the village authorities in the instant case would be contrary to public policy, because, if money has been spent illegally, if it has once gone, and the city solicitor will not bring a suit to recover it, the public will be without a remedy, because no taxpayers would dare hazard bringing a suit if no matter what they recovered they could not have their counsel compensated out of the fund thus recovered, but would themselves have to bear the brunt of it. I say that to adopt such a rule would be contrary to public policy, and would be smiling upon the collusive acts of officers in the illegal payments of money, because when once done it could not be undone; or in all human probability would not be undone. We think the right inherent at common law that, where the municipality has illegally paid money, and a man has illegally received that money, and the public

officers whose duty it is to recover it neglect and re-
fuse upon demand to bring the suit, taxpayers, for
the benefit of the whole community, have and should
have the right to maintain such an action. Any
other policy would be subversive of the enforcement
of our laws against the illegal expenditure of money
by municipalities.

When in this case there was brought to the atten-
tion of the village solicitor the illegal payment of
money, it was his duty to bring the suit to recover it,
and, when he did not so bring the suit, it was the
right, if not the duty, of public-spirited citizens to
see that the laws were enforced, and that the money
raised by public taxation was spent in accordance
with the law.

That the citizens could maintain this suit is set-
tled by the very suit itself, because it was brought
and judgment for about $16,000 was returned by a
jury in this county, and upon an appeal from that
judgment the Court of Appeals of another district
affirmed the judgment. The Supreme Court affirmed
the judgment of both courts; so it settled the right
of the citizens to maintain this suit.

The courts that heard this case went farther than
that, for they allowed a reasonable, not an unrea-
sonable, attorney fee for the work that the lawyers
had so ably performed. And then it was sought to
circumvent the collection of this fee by the lawyers,
and in a manner to punish the daring citizens and
taxpayers of Bedford who had the stamina and back-
bone to bring this suit, by compelling them to pay
the attorneys through whose efforts a fund in the
sum of $16,000 had been created—and now it is said
there is no warrant in law to pay this sum, or any

part of the sum, notwithstanding the judgment of the courts in this very case. It is said that these judgments are void; for the proceeding was an action at law and the court had no right to fix the attorney fees, nor to allow them. But that is a new doctrine. It must be remembered that our courts sit both as courts of equity and courts of law, and, after a sum of money has been collected in an action at law, the judge can exercise equitable power and order paid out of the fund that has been brought into the court by the efforts of the attorneys reasonable compensation. And why not? It is done for the benefit of the entire community, and why should not the entire community bear the brunt of the entire charge in bringing back into the village treasury money that has been illegally paid out?

But fortunately we are not limited to surmises in this sort of a case. It is similar to a case where a stockholder has been compelled to bring a suit to recover money which has been illegally expended by the corporation, and we ourselves, within the last year, allowed attorney fees of over $5,000 for bringing that very sort of suit, and that sum was paid, not out of the recovered funds, but by the corporation itself.

Again, under the old stockholders' liability suit, an action not in equity, but at law, could be brought by a creditor of the corporation for "money only," and it could be brought not only on his own behalf, but on behalf of all other creditors of the corporation, and out of the fund realized in said suit the courts always could and did allow a reasonable attorney fee. The court has inherent power to protect its officers where they perform a public service,

or a semi-public service, and recover for the public sums of money. I say the courts have inherent power to authorize compensation out of the fund that is brought into court to its officers creating such a fund. If a party establishes a lien on property, and the property is sold, the attorney for that person is entitled to compensation out of the funds realized by his efforts.

But, fortunately, again we are not limited to those cases that are analogous only to the instant case, for in the case of *Walker* v. *Village of Dillonvale*, 82 Ohio St., 137, 92 N. E., 220, 19 Ann. Cas., 773, the Supreme Court of Ohio decided the question flat-footed. That was an action for money only, and out of the funds realized the attorneys were allowed compensation. In that case the court quoted with approval a Wisconsin case, *Webster* v. *Douglas County*, 102 Wis., 181, 77 N. W., 885, 78 N. W., 451, 72 Am. St. Rep., 870, where the same proposition was decided, and there is an abundance of authority to the effect that where a fund has been created, which is for the benefit of the entire community, out of that fund should be paid a reasonable compensation to the attorneys through whose labors such a fund was created. As already stated, any other policy would be subversive of the very best interests of our municipal and state governments, because to put the matter beyond recovery would be only to pay the money illegally, and then, if a city solicitor or other officer whose duty it is to recover the money failed or neglected so to do, the citizens would be powerless. The adoption of such a proposition would be contrary to public policy and inimicable to the best interests of our country and the municipalities in our state.

Another argument is made in this case, and that is that the members of the council now were not the members of council when this resolution was passed directing the clerk to receive from Wright the money that Wright had illegally drawn. I presume the council that passed that resolution may have been the same inspectors that work for Wright, but it is argued that the men then are not the same men; therefore the writ would be unavailing. Well, if by changing the officers of a municipality one can divest himself of obligations, it might be well for many municipalities to change officers. The councilmen are named incidentally. They are the men who must pass the resolution, but the money is to come out of the village treasury, and it is the village of Bedford that is the real defendant, and, of course, the village of Bedford can act only through its councilmen, and, therefore, they are the parties; and, perhaps, since this mandamus suit was started there may be new members of the council, and so it would go on *ad infinitum,* by simply changing officers, a legitimate right of recovery could be prevented.

We see no reason why this writ should not issue. Further, we can see no reason why the lawyers who have so richly earned their fee should have to resort to the courts to compel payment out of the fund created by them, which was surreptitiously paid into council for the very purpose of defeating the claim of the lawyers, which the courts had adjudged due them.

Again referring to the argument made that these orders are void. Well, to hold that a court has no power to allow compensation for members of the bar, its own officers, where they have rendered public

service and have recovered for the public sums of money that taxpayers had to bring suit to recover, when the officers whose duty it was to do so had failed and neglected so to do, would be so bad that one cannot permit his imagination to say how far the badness might go. We think there is abundance of authority in justice, in law, and in equity for the allowance of this writ, and the writ of mandamus will be issued ordering and commanding the village of Bedford and its officers to draw this warrant and to pay the sum of money named in the writ.

*Writ allowed.*

SULLIVAN and LEVINE, JJ., concur.