16154

SHILLITO v. CITY OF SPARTANBURG

(51 S. E. (2d) 95)

*Mr. John G. Galbraith,* of Spartanburg, for City of Spartanburg and its officials, and *Messrs. Carlisle, Brown & Carlisle,* of Spartanburg, for Board of Trustees of Spartanburg City Firemen's Pension Fund, *as Joint Appellants,*

14

*Mr. John G. Galbraith,* of Spartanburg, for the City of Spartanburg and its officials, *Appellants,*

*Mr. E. W. Johnson,* of Spartanburg, *for Respondent,*

*Mr. John G. Galbraith,* of Spartanburg, for the City of Spartanburg, Appellant, on re-hearing,

*Mr. E. W. Johnson,* of Spartanburg, *for Respondent,* on re-hearing,

*Mr. John G. Galbraith,* of Spartanburg, for the City of Spartanburg, *Appellant,* on re-hearing and in reply,

December 7, 1948.

FISHBURNE, Justice.

This cause is here on appeal to review the judgment of the circuit court of Spartanburg County which declared unconstitutional an Act passed by the General Assembly (No. 841, Act Jan. 23, 1946, 44 St. at Large, p. 2494) providing for an annual tax levy in the city of Spartanburg for the benefit of the Spartanburg City Firemen's Pension Fund.

The plaintiff, a resident and taxpayer of the City of Spartanburg, challenges the constitutionality of the Act as being in violation of various provisions of the Constitution. The action is brought by the plaintiff not only in his individual capacity as a taxpayer to recover the sum of $6.28, which is the amount of the tax levied against his property under the foregoing Act and which he paid under protest, but his complaint is framed as a class suit, and in the body of the complaint he alleges that the proceeding is brought by him as a taxpayer and for the benefit of himself and all other citizens and taxpayers of the city of Spartanburg. It is claimed that the complaint seeks relief of a three-fold character: It is aimed, (a) against the illegality of the tax; (b) against the levying of subsequent assessments under the alleged unlawful tax; and (c) against the disbursement of funds collected from such tax.

The defendants moved to strike various allegations from the complaint, among them those allegations which sought to set up a taxpayers' action. Reserving their rights under this motion, they answered admitting certain allegations setting out the levy of the tax provided for in the Act which is under attack, and that the plaintiff paid the amount assessed against him under protest. They denied, (1) that the action was a class action, (2) that the tax was illegally levied or collected; (3) that Act No. 841 is unconstitutional; and (4) denied the allegations which sought injunction and control of the funds so collected.

It further appears from the answer that the funds collected under the authority of the challenged Act amount to about $25,000.00, and that at the time of the commencement of this action substantially all of the levy had been paid in by the taxpayers of the city. That this amount was paid without objection or protest on the part of the taxpayers of Spartanburg, except the $6.28 paid by the plaintiff; and it is averred that plaintiff's sole remedy, if any, is under Section 2808 of the 1942 Code for its recovery. It is alleged

that the plaintiff is without right to assert in behalf of the taxpayers paying without protest, a remedy which they themselves do not have. The City of Spartanburg also defended on the ground that so much of plaintiff's cause of action as seeks to enjoin by injunction further assessments and levies under the 1946 Act, is in violation of the provisions of Sections 2807 and 2809, 1942 Code, which provide that the collection of taxes shall not be stayed or prevented by injunction.

Those defendants who comprise the Board of Trustees of the Spartanburg City Firemen's Pension Fund, joined in the motion to strike certain allegations from the complaint, and served a separate answer adopting that of the defendants, the mayor, city councilmen, and treasurer of the city of Spartanburg.

Upon the institution of the suit, the plaintiff obtained a temporary injunction, later made permanent, restraining the defendant, City of Spartanburg, from turning over the proceeds of the tax fund collected under the alleged invalid Act to the Firemen's Pension Fund. Further assessments and levies were likewise enjoined.

The cause was heard upon the pleadings. The circuit court overruled the motion to strike, upheld the contention of the plaintiff that the action could be brought as one for a class; made permanent the order restraining the transfer of the funds collected by the City of Spartanburg to the Firemen's Pension Fund; enjoined further levies and assessments under the 1946 Act which it held to be unconstitutional, and ordered the funds already collected thereunder (except the $6.28 sued for) to, "* * * be a part of the general funds of the City of Spartanburg, subject only to payment of such attorney's fees as may be allowed the attorney for the plaintiff by the court upon proper notice and application therefor before me, and for this purpose only jurisdiction is retained."

The circuit court in striking down the Act (1946 Gen. Stat. 2494), based its action upon various constitutional grounds, but in our opinion it will be necessary to consider only one alleged violation of the Constitution which renders the Act invalid.

The respondent contends that the Act runs counter to several constitutional provisions, among them Art. III, Sec. 34, in that it is a special law where a general law can be made applicable.

By Art. III, Sec. 34, it is provided that the general assembly of this state shall not enact local or special laws concerning any of the following subjects, or for any of the following purposes, to wit: Here follow eight enumerated subjects prohibited by the Constitution. This enumeration is followed by subdivision 9, which provides: "In all other cases, where a general law can be made applicable, no special law shall be enacted." We are not concerned with the first eight numbered subjects; they have no relevancy here.

The 1946 Act provides that a tax of one mill shall be levied annually on property in the city of Spartanburg and turned over to the Spartanburg City Firemen's Pension Fund. The Act is mandatory upon the city officials and directs that the fund collected from the one mill tax shall be specifically earmarked and set aside for the purpose above stated. By its restrictive terms, it applies only to the City of Spartanburg among all the municipalities in the state. No effort at classification is made. No other city or town is included within the terms and provisions of the law. The appellants argue, however, that the Act should be upheld because it is none other than a local taxing statute which appropriates for a permitted municipal purpose, provides a levy accordingly, and is, therefore, valid.

A general law of the state, Section 7658-1, 1942 Code, creates a firemen's pension fund in all cities in the class including Spartanburg, states the purpose of the fund, its

sources of income or revenue, and provides for a board of trustees to administer it. This law, however, authorizes no municipal tax levy. Code Section 8028 provides that certain funds collected by the state insurance commissioner from fire insurance companies be apportioned among certain fire departments complying with the statute. Both of the foregoing sections of the Code comprise general laws which are applicable to certain cities duly classified. To the same effect are Sections 7531 and 7532.

It is true that each county or city in the state is a separate taxing district and has corporate and public purposes to be accomplished by means of taxation, limited alone to citizens or property within its territory. *Hay v. Leonard,* 212 S. C. 81, 46 S. E. (2d) 653; *Anderson v. Page,* 208 S. C. 146, 37 S. E. (2d) 289; *State v. Touchberry,* 121 S. C. 5, 113 S. E. 345; *Murph v. Landrum,* 76 S. C. 21, 56 S. E. 850.

The foregoing cases uphold the principle that individual districts—for example, counties, cities and towns and school districts, may impose a legal tax limited in application and incidence to persons or property within the prescribed area. In the cited cases, however, the statutes under construction not only applied uniformly to all persons and property within the area affected, but the funds collected from the particular levy were to be used for the benefit of all persons residing within the area, whether such purpose was for the support of schools, roads or government. Such funds were not confined to the sole use and benefit of any particular class.

The Act before us provides for a general tax on all property within the city of Spartanburg, the proceeds of which are to be used solely for the benefit of a specified class. The law relates to particular persons or objects (Firemen's Pension Fund) as one of a portion of a class. It is apparent that it is restricted to the use and benefit of firemen only in the City of Spartanburg.

It cannot be maintained that because the Act is local in form, it must be presumed that there was some sufficient local necessity for its enactment, for this would totally defeat the provisions of the Constitution. As was said in *Thomas v. Macklen,* 186 S. C. 290, 195 S. E. 539, 542, "If it must be assumed, merely because the statute has been enacted, that the Legislature had information showing that there was a necessity for such legislation with reference to the particular locality, it would follow that all legislation local in form must be upheld, however general the nature and subject-matter of such legislation might be. Such a rule of construction would be contrary to the mandatory character of the constitutional provisions we are considering."

The legislative isolation effected by the 1946 Act with reference to the Firemen's Pension Fund in the City of Spartanburg, if allowed, would doubtless be followed by other local Acts, hardly distinguishable, and the evasion of this constitutional provision would become a matter of general practice.

The language of the Constitution which prohibits a special law where a general law can be made applicable, plainly implies that there are or may be cases where a special Act will best meet the exigencies of a particular case, and in no wise be promotive of those evils which result from a general and indiscriminate resort to local and special legislation. There must, however, be a substantial distinction having reference to the subject matter of the proposed legislation, between the objects or places embraced in such legislation and the objects and places excluded. The marks of distinction upon which the classification is founded must be such, in the nature of things, as will in some reasonable degree, at least, account for or justify the restriction of the legislation. *Sansing v. Cherokee County Tourist Camp Board,* 195 S. C. 7, 10 S. E. (2d) 157; *Towwnsend v. Richland Co.,* 190 S. C. 270, 2 S. E. (2d) 777; *Gillespie v.*

*Blackwell,* 164 S. C. 115, 161 S. E. 869; *Sirrine v. State,* 132 S. C. 241, 128 S. E. 172.

The question under discussion was comprehensively treated in *Webster v. Williams,* 183 S. C. 368, 191 S. E. 51, 54, 111 A. L. R. 1348, where it is stated:

"While it is impossible to lay down any general rule by which to determine whether a special or local statute comes within the constitutional inhibition now under discussion, there can be no doubt about the applicability of the inhibition in that class of cases, such as the present, where the record discloses no peculiar local conditions requiring special treatment." And see *Floyd v. Calvert,* 114 S. C. 116, 103 S. E. 82.

If there is any peculiar local condition in the city of Spartanburg to differentiate municipal taxation for the pensioning of firemen there from the situation prevailing in other cities of the state, the record fails to disclose it. That a general law could be framed with reference to municipal assessments for the support of a pension fund applicable to cities and towns of certain classes is entirely apparent. If it were not for the constitutional prohibition that no special law shall be enacted where a general law can be made applicable, the legislature would in all probability be overwhelmed with a mass of special and local legislation affecting particular communities and not the state as a whole.

It follows from what we have said, that the Act in question (1946 Gen. Stat. 2494) is unconstitutional, because it runs counter to Art. III, Sec. 34, subdivision 9. Consequently, respondent is entitled to be refunded the sum of $6.28 which he paid under protest. .

We are not concerned here with the question as to whether one taxpayer who has paid an illegal tax can maintain an action to recover for himself, and others similarly situated, the tax so illegally exacted. The respondent does not sue

for a refund except in his individual case. There is no allegation in the complaint that any other taxpayer of the city of Spartanburg who paid this tax did so involuntarily or under coercion. The respondent brought this action as a taxpayers' action in order to obtain the major relief sought, which brings us to the issue made as to whether or not an action of this kind can be instituted for the benefit of all similarly situated.

As a rule, private citizens may not restrain official acts when they fail to allege and prove damage to themselves different in character from that sustained by the public generally. An apparent exception to this rule exists when the Act sought to be enjoined is an unlawful diversion of public funds. 52 Am. Jur., Sec. 3, Page 3. In such cases, a taxpayer who may be compelled to pay the assessment, or who has contributed to the sum jeopardized, is considered to have sufficient interest to enjoin the illegal Act. The decided preponderance of authority holds that a taxpayer singly or in a class suit, may maintain a suit in equity to restrain unlawful municipal action which leads, directly or indirectly, to taxation, and that a taxpayer, as specially damaged by the increase of the burden of taxation on his property, has a special interest, distinct from the general public, in the subject matter of such a suit which entitles him to relief. 52 Am. Jur., Sec. 3, Page 3.

A citizen and taxpayer has standing as such to contest the expenditure of public funds under an alleged unconstitutional statute. 52 Am. Jur., Sec. 15, Page 11. Under the foregoing authorities, we are satisfied that the action as brought can be maintained to challenge the validity of this special law and the alleged unlawful diversion of public funds to the designated beneficiary. On a kindred subject see *Williams v. Wylie,* 212 S. C. 51, 46 S. E. (2d) 540; *Moseley v. Welch,* 209 S. C. 19, 39 S. E. (2d) 133; *Kirk v. Clark,* 191 S. C. 205, 4 S. E. (2d) 13.

Appellants except to that portion of the decree which adjudges that the funds collected under the invalid Act become a part of the general funds of the city of Spartanburg. It is contended that even though the Act may be invalid, this money rightfully belongs to the Firemen's Pension Fund, and that Art. X, Sec. 3 of the Constitution applies. This section provides: "No tax shall be levied except in pursuance of a law which shall distinctly state the object of the same; to which object the tax shall be applied."

It is argued that if the taxes collected under the invalid statute—approximately $25,000.00—are not applied as directed, then there is no legislative authority for its application elsewhere.

The above cited section of the Constitution has reference to a valid Act, not an invalid Act. It would be an anomalous situation to direct the payment of this fund to the Firemen's Pension Fund when the very legislative Act under which it was levied and collected is held to be unconstitutional. It appears from the record that the defendant, Roy E. Leonard, is treasurer of the City of Spartanburg and is *ex-officio* secretary and treasurer of the Board of Trustees of the Spartanburg Firemen's Pension Fund. The funds collected have not been turned over to the Firemen's Pension Fund, but are still in the possession of appellant, City of Spartanburg. The lower court committed no error. Such transfer would constitute an unlawful diversion.

Appellants question that provision of the decree of the circuit court wherein jurisdiction of the court is retained for the purpose of passing upon the application for a fee for respondent's attorney after due application therefor shall be made. The contention is made by respondent that as a result of the suit a fund, derived from an unlawful levy, has been brought into court and held there subject to the court's further order. And it is argued that where funds are brought into court in consequence of the suit instituted by

the plaintiff as a class action, the rule announced in the case of Petition of Crum (*Johnson v. Williams*), 196 S. C. 528, 14 S. E. (2d) 21, 23, should be applied.

It was said in the above cited case:

"A review of the authorities shows that a Court exercising equitable jurisdiction may make an allowance of a reasonable fee out of the common fund or property created or preserved, for an attorney representing a party who, at his cwn expense, has maintained a suit for the recovery, preservation, protection, or increase of a common fund or common property, or has created or brought into Court a common fund in which others are entitled to share."

The underlying principle in cases brought in equity authorizing the payment of an attorney's fee in a class action generally has to do with a common fund owned by the litigants in such proceeding and distributable to them as their own property. This principle, however, is not solely confined in its application to what is usually termed a "common fund." It is earnestly urged by appellants that the rule does not extend to a case like the one before us, involving public funds. With this contention we are unable to agree.

The specific question for determination with reference to counsel fees charged against public funds, under the special facts of this case, has apparently never been passed upon by our court, but there are cases in other jurisdictions closely assimilated to this one in which the question was presented and in which counsel fees were upheld. These will be later adverted to.

This suit was not instituted by the respondent taxpayer in his individual capacity nor for his private gain, but was brought as a class action on behalf of all the taxpayers of the city of Spartanburg to recover the money collected under the unconstitutional statute of 1946; and the city of Spartanburg was made a defendant as trustee for all of its

members. The action is in all respects one in equity. The right of a court of equity to subject a fund so recovered, and under the control of the court, to the reasonable costs of such creation or preservation, is well established. Petition of Crum (*Johnson v. Williams*), *supra*. The rationale of the principle is enunciated in the case of *Kimble v. Board of Com'rs. of Franklin County*, 32 Ind. App. 377, 66 N. E. 1023, wherein the court stated:

"Defendants as citizens and taxpayers prosecuted certain actions for the recovery, for the use and benefit of the county, money paid by the county commissioners upon alleged illegal claims, and, upon the recovery and collection of the judgments, retained therefrom the expenses incurred, including attorney's fees, and paid the balance to the county, making a full report of their doings. The board of commissioners accepted and retained the amount so paid, but refused to approve the report, and brought suit for the amount retained by defendants. Held, that defendants had the right to retain the amount of the expenses out of the fund before parting with it, each item being open to investigation and proof as to correctness."

The well reasoned case of *Fox v. Lantrip*, 169 Ky. 759, 185 S. W. 136, was one in which an allowance for fees of the taxpayer's attorney was made out of the fund recovered on a claim against a county school superintendent for money wrongfully paid to him. Paragraph 8 of the syllabus reads:

"Citizens who successfully bring suit to recover back public funds wrongfully appropriated should be allowed compensation for their attorneys, payable out of this fund, when it has been collected and paid into the county treasury."

The rule thus announced is well supported in the opinion wherein it is said, on page 766 of 169 Ky., 185 S. W. 136, 139:

"There is another question that should be disposed of. In the lower court the appellees moved the court to allow their attorneys, out of the fund recovered, a fee for their services in recovering this money for the county. This motion was overruled, to which appellees excepted, and prayed in the lower court, as they had a right to do on this record, an appeal to this court.

"We think the motion should have been sustained, and a reasonable attorney fee allowed. It is very commendable that public-spirited citizens should endeavor to protect the tax-payers of a county from the efforts of an accommodating fiscal court to make unauthorized and unlawful appropriations of the public funds, and to seek to recover the money so illegally disbursed from the persons to whom it was wrongfully paid.

"And when, as in the case, the public authorities, whose duty it is to bring a suit to recover public funds wrongfully paid out, refused to do so, and the duty is thus imposed, on the citizen in his private capacity, he should be allowed his attorney fees if successful.

"Citizens should be encouraged to bring suits like this, and when they have succeeded in covering into the county treasury money for the benefit of the people of the county that would otherwise be lost, it is no more than right and just that they should have these fees. If attorney's fees could not be allowed in cases like this, and a citizen were required to pay out of his own means attorney's fees' expended in collecting, for the benefit of the public, a public fund, there are not many citizens who would care to voluntarily incur this expense. They would rather bear the probably trifling personal loss sustained by the illegal appropriation than subject themselves to the much larger loss that would be incurred in attorney fees.

"We therefore think that when, upon demand, the authorities who should bring a suit like this fail or refuse to do

so, and it is brought by private citizens, the court trying the case should, when the suit has been prosecuted to a final conclusion and the fund sought to be recovered has been actually collected, in whole or in part, and paid into the county treasury, make a reasonable allowance to the attorneys and direct the payment of the sum by the fiscal court. But in no case should any allowance be made unless the fund sought to be recovered has been recovered in whole or in part and, actually paid into the county treasury, and then the fee allowed should be in proportion to the services rendered, as well as the amount recovered, but in no instance exceed the sum actually collected and paid into the treasury. If no money is recovered or paid into the county treasury, then no allowance should be made for attorney fees."

An allowance of attorney's fees was made in the above case, payable out of the fund collected and paid into the county treasury. It thus appears that the foregoing case is more nearly in point, and entitled to greater weight than is the case from the same jurisdiction, of *Marion County v. Rives & McChord*, 133 Ky. 477, 118 S. W. 309, relied upon by appellants. In the latter case, the paramount question stressed by the court was the right of attorneys to sue the county for counsel fees in the absence of statutory authority. In that case, unlike the case before us, no allowance of counsel fees was made or provided for in the original action in which the money was recovered, nor while the fund was under the court's control.

The case of *Council of Village of Bedford v. State ex rel. Thompson, Hine & Flory*, 123 Ohio St. 413, 175 N. E. 607, illustrates the same rule. In that case counsel fees were allowed the taxpayer's attorney out of a fund recovered which represented certain unauthorized payments made by the Village of Bedford. The syllabus by the court reads:

"Where a taxpayer, on behalf of himself and other taxpayers of a village, has successfully prosecuted an action to

recover money unlawfully paid by such village, and such money has been restored to the village, such action, while for money only, possesses certain equitable characteristics, and the trial court, out of the fund so created, in the exercise of equitable powers, may allow a reasonable fee to the attorneys of the taxpayer, payable out of the fund so created. *Brundige v. Village of Ashley,* 62 Ohio St. 526, 57 N. E. 226, distinguished."

The same principle is fully covered and discussed in *State ex rel. Thompson, Hine & Flory v. Council of Village of Bedford,* 37 Ohio App. 265, 174 N. E. 601.

In *Russell v. Tate,* 52 Ark. 541, 13 S. W. 130, 132, 7 L. R. A. 180, 20 Am. St. Rep. 193, a bill was filed for the purpose, among other things, of compelling restitution to the town treasurer of the town of Russellville of the sum of $675.00 paid out by the town authorities, for wrongful and illegal purposes. In granting this relief the court said:

"Suits by tax-payers against towns and their officers to prevent or remedy misapplication of town funds, are not only allowed by statute, but it is the prevailing doctrine in America that tax-payers may maintain them, in the absence of statute. Their relations to the municipality are analogous to those of stockholders to a private corporation. *   *   *

"There is no foundation in the authorities for the claim that the power of chancery is only injunctive. It would be a reproach to justice, if it were true. In the present case the appropriation was made, the warrant was drawn, and the money paid by the treasurer before an attorney could have comprehended the situation, and have written the caption of a complaint. Chancery has ample power to prevent further wrong, and require reparation for that which has been done."

Another case in which there is an excellent discussion of the right of a taxpayer to maintain such an action and to be allowed reasonable counsel fees, is that of *State ex rel. Bon-*

*ner v. Andrews,* 131 Tenn. 554, 175 S. W. 563, 567, where it is said:

"From the various cases cited, as well as the text of Dillon quoted, it is apparent that the kind of action we have under examination is closely assimilated to, if not practically identical with, those suits in which minority stockholders sue to recover illegal disbursements made by the governing body, or to enforce rights of action belonging to the corporation which such governing body refuses to bring. The right to a lien for counsel fees in cases of this character was decided in the case of *Grant v. Lookout Mt. Co.,* 93 Tenn. 691, 28 S. W. 90, 27 L. R. A. 98. The syllabus of that case sufficiently expresses its substance as follows:

" 'A corporation is liable for complainants' reasonable attorney's fees, incurred in the successful prosecution of a just and necessary suit by a minority of its stockholders against itself, its officers and directors, for the benefit of the company, to enjoin the fraudulent disposition of its properties, or to recover properties already fraudulently transferred. And the attorney's fees, in such case, constitute a lien upon the property recovered by the suit.'

"In opposition to the foregoing views we are referred by counsel for defendants to the cases of *Park v. City of Laurens,* 68 S. C. 212, 46 S. E. 1012, and *Milster v. [City Council of] Spartanburg,* 68 S. C. 243, 47 S. E. 141. The first of these cases is not in point. It appears that one J. H. Garrison, a resident and taxpayer of the city of Laurens, instituted a suit by which he caused to be collected a large sum of money due the city for taxes which the city authorities had refused to collect. Instead of presenting the claim for attorney's fees in that case, the promise of the mayor of the city was taken, to the effect that, on presentation of a claim before the city authorities, a reasonable fee would be paid. On this promise a suit was brought by the attorney directly against the city, and it was held that the mayor had no

power to bind the city by his promise; furthermore, that the facts stated raised no implied promise, or other privity between the complaining attorney and the city. The court, however, added, by way of explanation and to prevent misconception the following:

" 'To avoid misunderstanding, it may be well to say, the right of Garrison (the taxpayer who had brought the suit to recover taxes) to bring his action for counsel fees and other expenses, on the ground that he made these disbursements in securing a public municipal right which the city council refused to enforce, is not here involved. Such an action would in no wise depend upon any claim by Garrison's attorney to represent the city of Laurens, or its council, such as is alleged in this complaint; but, if it could stand at all, would have to rest on the principle thus laid dówn in Keener on Quasi Contracts, 341: "Where an obligation is imposed by law upon a person to do an act, because of the interest which the public has in its performance, it would seem that on the defendant's failure to perform, a person performing the same with the expectation of receiving compensation should be allowed to recover against the defendant." '

"In *Milster v. [City Council of] Spartanburg, supra,* it appeared that the attorneys for the petitioners in a case similar to the Laurens case moved for an order of reference to ascertain what fee should be allowed them for the taxes brought into the city treasury. This motion was denied on two grounds. The first was that the complaining taxpayer who had brought the suit to recover the taxes could not be regarded as the representative of the municipality so as to make his contracts for reasonable counsel fees binding on the city as its representative. The second ground was that the proceeding was one brought to obtain the writ of mandamus, and that under it no money came into court, but that it was paid directly to the city. The court said:

" 'The only possible ground on which this claim could be placed is that Abbott and Milster, as citizens and taxpayers,

should be regarded as representing the city in a matter of public concern, in which the city council refused to act for the city. Even if their contract for attorney's fees could be regarded as a contract of the city standing on as high ground as if it had been made directly with the city council, payment of the fees could not be adjudged in a mandamus proceeding. In such a proceeding the court has no control of the funds after they are paid to the city council. If there is any contract, express or implied, with either of the petitioners, or their attorneys, it can only be enforced by a direct suit against the city.'

"As to the first ground, we believe the decision is contrary to the great weight of authority, as shown by our previous discussion. As to the second point, it is inapplicable to the $5,000.00 actually in court in the case before us."

With reference to our two cases cited and discussed by the Tennessee Court in *State ex rel. Bonner v. Andrews, supra; Park v. City of Laurens,* 68 S. C. 212, 46 S. E. 1012, and *Milster v. City Council of Spartanburg,* 68 S. C. 243, 47 S. E. 141, it is clear that *Park v. City of Laurens* is not in point as applied to the case at bar. The case of *Milster v. City Council of Spartanburg* presents certain variations from the present situation, but insofar as the rule in that case might be said to be inconsistent with the judgment hereinafter announced, it must be regarded as having been superseded.

In the case at bar, the respondent taxpayer in seeking counsel fees for his attorney does not base this claimed right upon any contract, express or implied. It is a right which is founded in equity and to be determined upon equitable principles.

But appellants contend that no public funds ever came into the care or custody of the court. It is argued that these tax funds were collected by the city of Spartanburg and have ever since remained in the treasury of the city. It may be

conceded that the funds so collected—approximately $25,-000.00—have remained in the municipal treasury, but it is quite evident from the record that when this suit was instituted and the injunction obtained, the funds in question were practically in a state of transition from the city treasury, under the authority of the unconstitutional statute, into the hands of the Board of Trustees of the Spartanburg City Firemen's Pension Fund.

In his complaint, the respondent not only sought and obtained an injunction against further unlawful levies under the 1946 statute, but asked that the funds already collected be impounded and held in the constructive custody of the court, subject to its further orders; and that the plaintiff be given any other proper and just relief along with the costs of the action. By its decree, the lower court held that the funds already collected by the city should be a part of the general funds, subject only to payment of such counsel fees as might be allowed plaintiff's counsel upon proper notice and application therefor. For the subsequent determination of this question, jurisdiction was retained, so that, in effect, the court obtained custody of this fund, and rightly so, just as though it had been recovered back upon a judgment.

The city of Spartanburg, acting under the unconstitutional statute, collected these funds as *quasi* trustee for the Firemen's Pension Fund. And this tax money would not be in the city treasury today had it not been for the public spirited course followed by respondent in bringing this taxpayers suit. The specific purpose for which the tax was levied has been declared unlawful, in consequence of which the designated beneficiary receives no part of it. By operation of law it reverts to the city for the benefit of the public. It is unappropriated and rests in the general fund. Occupying this status, it is not earmarked nor allocated to any special municipal purpose. While coming within the category of "public funds," this revenue, derived from an unlawful assessment, has been saved for the city and its taxpayers, just

as realistically as though recovered back from the Board of Trustees of the Spartanburg City Firemen's Pension Fund and paid into the city treasury. Until the respondent set the judicial machinery in motion, this fund was not the property of the city of Spartanburg. To all intents and purposes, title thereto was in the Board of Trustees of the Firemen's Pension Fund, and remained so until the 1946 Act was nullified and the funds recovered for the citizens and taxpayers of the city.

The fact that this money was not actually received by the Board of Trustees of the Firemen's Pension Fund and by such Board turned over to the custody of the court, is not a differentiating factor insofar as it affects the source of the recognized power of equity to grant counsel fees. For all practical purposes, this fund was created, protected and preserved for the benefit of the taxpayers of the city of Spartanburg through the medium of the judicial machinery set in motion by the respondent. And reasonable counsel fees should be paid therefrom. It is only fair and right that this payment should be made. As was said in *Sprague v. Ticonic Nat. Bank,* 307 U. S. 161, 59 S. Ct. 777, 780, 83 L. Ed. 1184 (quoted in *Johnson v. Williams,* 196 S. C. 528, 14 S. E. (2d) 21):

"Such allowances are appropriate only in exceptional cases and for dominating reasons of justice.   *   *   *   As in much else that pertains to equitable jurisdiction, individualization in the exercise of a discretionary power will alone retain equity as a living system and save it from sterility."

It may be well to state that our decision is predicated upon and confined to the exceptional facts of the case before us.

A rehearing was granted in this case on the issue of allowance of counsel fees. The opinion, therefore, which was filed August 24, 1948, is hereby withdrawn and this opinion substituted therefor.

34

This case is remanded to the court of common pleas of Spartanburg County for appropriate action on application for allowance of reasonable fees to respondent's counsel in conformity with the views herein expressed.

Judgment affirmed.

BAKER, C. J., and STUKES, TAYLOR, and OXNER, JJ., concur.