22406

Jane WOLPER, Appellant, v. The CITY COUNCIL OF the CITY OF CHARLESTON, Joseph P. Riley, Jr., Mayor of the City of Charleston, and W. O. Thomas, Jr., Treasurer of Charleston County, Defendants, of whom The City Council of the City of Charleston and Joseph P. Riley, Jr., Mayor of the City of Charleston are, Respondents.

(336 S. E. (2d) 871)

Supreme Court

*David Popowski,* Charleston, *for appellant.*

*Wade H. Logan, III,* Charleston, *for defendant, W. O. Thomas, Jr., Treasurer.*

*William B. Regan,* Corp. Counsel, *Frances I. Cantwell,* Asst. Corp. Counsel; *Huger Sinkler* and *Karen LeCraft Henderson,* of *Sinkler, Gibbs and Simons,* Charleston, *for respondents, City of Charleston, et al.*

*M. William Youngblood, Jr.,* of *McNair, Glenn, Konduros, Corley, Singletary, Porter and Dibble,* Columbia, *for The City of Greenville, amicus curiae.*

*Robert E. Lyon, Jr.,* of *Municipal Association of S. C.;* and *Roy D. Bates,* Columbia, *for Municipal Association of South Carolina, amicus curiae.*

Heard Oct. 22, 1985.

Decided Nov. 13, 1985.

NESS, Chief Justice:

Appellant Wolper brought this declaratory judgment action challenging the constitutionality of an ordinance enacted by the respondent City which authorizes a tax increment financing plan for the redevelopment of waterfront property within the City. The trial judge upheld the ordinance. We affirm.

Article X, Section 14(10) of the South Carolina Constitution authorizes municipalities to incur indebtedness for redevelopment within an incorporated municipality, with debt service to be provided from the increased increments of property tax revenue which result from the redevelopment project. The legislature subsequently enacted the Tax Increment Financing Law (the act), codified at S. C. Code Anno. Sections 31-6-10 to 120 (Supp. 1984), to establish authorization for municipalities to incur indebtedness to revitalize blighted and deteriorating areas within the municipalities.

Pursuant to the act, the City of Charleston enacted an ordinance authorizing a tax increment financing plan for the redevelopment of an area designated as the Cooper River Waterfront Redevelopment Project Area. The ordinance authorized redevelopment bonds to ·raise $4.6 million dollars,

approximately fifteen percent of the total cost of the redevelopment project. Wolper raises four constitutional issues.

*Impairment of Contract Rights*

Article 1, Section 4 of the South Carolina Constitution prohibits the enactment of any law which impairs the obligation of contract rights. Wolper asserts that the City has a contractual obligation to its general obligation bondholders to retire the general obligation bonds with the proceeds of *ad valorem* taxes. The redevelopment bonds are to be repaid from a special fund created by pooling the added increments of tax revenues which result from the increased property values in the redevelopment area. Wolper argues that the rights of the general obligation bondholders are impaired by the redevelopment bonds, since the increased revenue diverted for the repayment of the redevelopment bonds would have been available for the retirement of the general obligation bonds.

Before a tax increment redevelopment bond issue may be undertaken, there must be a finding that the property values in the targeted area are either static or in decline. S. C. Code Ann. Section 31-6-80(g) (iii)(Supp. 1984). The tax value of the property in the redevelopment area is frozen at a rate determined at the initiation of the bond issue. As redevelopment occurs, and property taxes in the area increase, the incremental increase in property tax is diverted to a special fund from which the redevelopment bonds will be retired. The frozen base portion of tax revenue on the redeveloped property is paid into the general fund for retirement of existing general obligation debt. Thus the same base is available for retirement of general obligation bonds during the redevelopment project as was available before the redevelopment bonds were issued.

The tax revenues from the redevelopment area would not have increased at all in the absence of the redevelopment project. The incremental increases which are diverted to the special fund have not affected the base *ad valorem* revenue, and consequently no impairment of contract rights has occurred.

*Use of Tax Revenue for Undeclared Purpose*

Article X, Section 5 of the South Carolina Constitution requires the taxing authority to state the public purpose to which the proceeds of a tax levy will be applied. Wolper argues that *ad valorem* taxes, levied for county and educational purposes, will be diverted for retirement of the redevelopment debt, a purpose not envisioned or authorized by the tax levy.

Article X, Section 5 applies only to tax levies, and not to legislation which creates no new tax. The act creates no new scheme of taxation; rather, it authorizes the increased increments of an existing tax to be designated for redevelopment purposes. Article X, Section 5 has no application here. *Cox v. Bates,* 237 S. C. 198, 116 S. E. (2d) 828 (1960); *State ex rel. Edwards v. Osborne,* 195 S. C. 295, 11 S. E. (2d) 260 (1940).

*General Obligation v. Revenue Bonds*

Municipalities are subject to a constitutional debt limitation for general obligation bonds which is based upon the assessed value of taxable property within the municipality. Article X, Section 14(7), South Carolina Constitution. Wolper argues the act contravenes this constitutional ceiling on general obligation debt. The trial judge held that redevelopment bonds issued pursuant to the act were not general obligation bonds, and therefore were not subject to the constitutional debt limitation. We agree.

Municipalities may incur two types of bonded indebtedness: (1) general obligation bonds, secured by the full faith, credit and taxing power of the municipality; and (2) indebtedness payable from a particular revenue-producing project or a special source authorized by Article X, Section 14(1) of the South Carolina Constitution. See *City of Beaufort v. Griffin,* 275 S. C. 603, 274 S. E. (2d) 301 (1981); Article X, Section 14(2) and (3), South Carolina Constitution.

Tax increment redevelopment funding is expressly authorized by Article X, Section 14(10) of the South Carolina Constitution. The redevelopment debt is to be retired from a special source, i.e., the incremental increase of *ad valorem* taxes on property within the redevelopment area. In the event the property values in the redevel-

oped area do not increase, or increase at a slower rate than anticipated, the repayment of the redevelopment debt is negatively affected. The redevelopment bondholders may not look beyond the special fund for retirement of the debt. The bonds are not secured by the full faith, credit and taxing power of the municipality, and therefore cannot be classified as a general obligation debt. *DeLoach v. Scheper,* 188 S. C. 21, 198 S. E. 409 (1938). The debt limitation of Article X, Section 14(7) does not apply. See, S. C. Code Anno. Section 31-6-20(B) (Supp. 1984).

### *Public Purpose*

The parties and the *amicus curiae* have strenuously argued whether the act, and the City's application of the act, contravene the constitutional requirements regarding public purpose. The trial judge ruled on the issue, and Wolper raised an exception on appeal on public purpose grounds. However, we note that Wolper's complaint does not raise this issue. Paragraph 17 of the complaint alleges constitutional infirmity on the three grounds already discussed. Ordinarily, the Court will refuse to address a constitutional issue which is not properly raised below. *Bobo Brothers, Inc. v. S. C. Tax Commission,* 271 S. C. 18, 244 S. E. (2d) 519 (1978). We have chosen to relax the rule in this case because the issue was obviously addressed by the parties below, and was ruled upon. More importantly, a final resolution of this issue is needed to restore the fiscal integrity of the municipalities in this State that have enacted local redevelopment plans under the act. We stress that an insufficiently pleaded issue generally will, in most cases, not be addressed by this Court.

Article I, Section 3 requires that all legislation, including that authorizing the issuance of revenue bonds, serve a public purpose. Wolper argues the act, as applied by the City, is invalid in that the City's redevelopment plan is designed for the benefit of only private interests. The question is two-fold. First, we must determine whether the redevelopment of blighted areas within the municipalities serves a public purpose. Second, we must review the details of the City's redevelopment plan to determine whether it complies with the public purpose dictates of the act.

By creating the act, the legislature declared the revitalization of blighted and deteriorating areas within the municipalities to be a public purpose. A determination of public purpose is primarily a question for the legislature. This Court will not interfere with that finding unless it is clearly wrong. *State ex rel McLeod v. Riley*, 276 S. C. 323, 278 S. E. (2d) 612 (1981).

We have recognized that the term public purpose is a fluid concept which eludes a precise definition. *Byrd v. County of Florence*, 281 S. C. 402, 315 S. E. (2d) 804 (1984); *Bauer v. South Carolina State Housing Authority*, 271 S. C. 219, 246 S. E. (2d) 869 (1978). However, it includes the promotion of the "public health, safety, morals, general welfare, security, prosperity, and contentment" of our citizens. *Byrd, supra* 315 S. E. (2d) at 805.

The elimination of decaying and unhealthy areas within a city directly benefits the public. The private parties who will eventually develop sites within the redevelopment area may benefit incidentally from the revitalization. However, an incidental benefit to private individuals is not fatal to a finding of public purpose. *Johnson v. Piedmont Municipal Power Agency*, 277 S. C. 345, 287 S. E. (2d) 476 (1982). We have little hesitation in concluding that the public purpose declared by the act is a proper one.

The City's application of the act is directed toward revitalizing the waterfront area of downtown Charleston. Prior to the project, the area was characterized by rotted pilings, foundations of demolished buildings, and rubble-filled marsh areas. Much of the land was unusable and many of the structures that existed in the area were infested by rodents and other pests. Flooding was not uncommon. The City proposes to, among other things, build streets, sidewalks, utility lines, a drainage system, a public waterfront park and a marketplace. It is anticipated that the revitalization of the area will encourage private investment in an area that has been ignored and even avoided for many years by private investors. Not only will the redevelopment eliminate a health and safety threat to the City, it will significantly increase the tax base within the area. It is expected to stimulate growth and development in the areas immediately adjacent to the redevelopment area. We agree with the trial

judge that the City's proposed plan envisions a public purpose.

## Conclusion

Tax increment financing acts have been established and upheld by many states. See, e.g., *People v. Crouch*, 79 Ill. (2d) 356, 38 Ill. Dec. 154, 403 N. E. (2d) 242 (1980). They allow local government officials to administer development without the restrictions which often accompany federal and state grants. See, Huddleston, *A Comparison of State Tax Increment Financing Laws*, 55 State Gov't. 1 (1982). South Carolina's Tax Increment Financing Act, as presently drawn, is constitutionally sound. The order of the trial judge is affirmed.

Affirmed.

GREGORY, HARWELL, CHANDLER and FINNEY, JJ., concur.