## 23885

William C. MYERS, Edward T. McMullen, Jr., and the South Carolina Policy Council Education Foundation, Plaintiffs v. Grady L. PATTERSON, Jr., State Treasurer of South Carolina, W.H. Alford, T.C. Atkinson, C.T. Brooks, Sr., V.C. Caggiano, Jr., V.L. Chapman, T.A. Drayton, J.C. Harden, R.W. Harrell, Sr., W.B. Harvey, Jr., A.B. McLeod, Jr., F.S. McWhirter, J. Mullinax, R.B. Ness, J.K. Newsom, Sr., W.M. Self, H.C. Shealy, D.E. Wilder, F.L. Willis, constituting the South Carolina Highways and Public Transportation Commission, and Walker P. Ragin, Executive Director, Defendants.

(433 S.E. (2d) 841)

Supreme Court

*Scott Elliott* and *Charles L.A. Terreni,* Columbia, *for plaintiffs.*

*Chief Counsel Victor S. Evans* and *Asst. Chief Counsel Linda C. McDonald* both of the *South Carolina Dept. of Highways and Public Transp.,* Columbia, *for defendant Comm'rs* and *Executive Director.*

*Chief Deputy Attys. Gen. Joseph D. Shine* and *Edwin E. Evans,* and *Asst. Atty. Gen. J. Emory Smith, Jr.,* Columbia, *for defendant State Treasurer.*

Heard Apr. 5, 1993; Decided July 6, 1993.

Reh. Den. Aug. 17, 1993.

HARWELL, Chief Judge:

The plaintiffs, as taxpayers, allege that an appropriation of gasoline tax revenue contained in the 1992 Appropriation Act violates the constitution by diverting the funds to a purpose other than that for which they were collected. We find no constitutional violation and enter judgment accordingly.

## I. *FACTS*

In 1987, the Legislature levied additional gasoline taxes for the purpose of funding the Strategic Highway Plan for Improving Mobility and Safety (SHIMS). Act No. 197, § 1, 1987 S.C. Acts 2198 (modified at S.C. Code Ann. § 12-27-1210 to -1320 (Supp. 1987). In 1992, the Legislature authorized a transfer of $25 million from the SHIMS account to the General Fund to pay indebtedness resulting from damage caused by Hurricane Hugo. Act No. 501, Part I, § 129.65, 1992 S.C. Acts 3249.[1] In addition, the Legislature allowed interest ac-

---

[1] Section 129.65 provides:

(SHIMS) Notwithstanding any other provision of law, the South Carolina Department of Highways and Public Transportation shall contribute an amount not to exceed twenty-five million dollars from revenues generated by Sections 12-27-1210, 12-27-1220, 12-27-1230 and 12-27-1240 of the 1976 Code of Laws of South Carolina after July 1, 1992, to

cruing to the SHIMS fund during the 1992-1993 fiscal year to be credited to the General Fund. Act No. 501, Part I, § 124.-27, 1992 S.C. Acts 3216.[2]

The plaintiffs brought this action to enjoin the $25 million transfer, claiming that sections 129.65 and 124.27 of Act 501 violate S.C. Const. art. X, §§ 5 and 7(a). The trial judge temporarily restrained the transfer, but later dissolved the order at the request of the State Treasurer because it purportedly placed the State's AAA bond rating at risk. Further temporary injunctive relief was denied on the ground that the plaintiffs had not shown a likelihood of irreparable injury. We granted the parties' petition to hear the case in our original jurisdiction.

---

the general fund of this state for payment of debts incurred from damages resulting from Hurricane Hugo. The purpose of the imposition of the taxes imposed pursuant to Section 12-27-1210 through 12-27-1240, to the extent of the contribution made, is to be for the purpose of payment of debts incurred by the State as a result of Hurricane Hugo. The contribution must be made on or before August 31, 1992, and to the extent the revenues generated pursuant to Section 12-27-1210 through 12-27-1240 beginning on July 1, 1992, are insufficient to make the determined contribution, revenues collected prior to July 1, 1992, from these sources may be borrowed to complete the amounts specified, provided they are replenished from collections received from these revenue sources after the date of the contribution.

[2] Section 124.27 provides:

(SHIMS Earnings on Investments) A. Section 12-27-1260 of the 1976 Code, as added by Act 197 of 1987, is amended to read:
"Section 12-27-1260. For the current fiscal year, the revenue derived from the tax levied by Sections 12-27-1210, 12-27-1220, 12-27-1230, and 12-27-1240 of the 1976 Code must be remitted to the State Treasurer to be credited to the fund established for [SHIMS]. This fund must be separate and distinct from the state general fund and highway fund. All unappropriated money in this fund must remain part of the separate fund. Money from this fund may be spent only for funding the [SHIMS] Program administered by the department and funding the Economic Development Account as provided in Section 12-27-1270 of the 1976 Code. No funds may be expended from this account other than for payment of engineering and planning, right-of-way acquisition, and construction of projects on the list submitted as provided in Section 12-27-1280 of the 1976 Code or those designated for economic development by the Coordinating Council for Economic Development as provided in Section 12-27-1270 of the 1976 Code."

This amendment omits language found in S.C. Code Ann. § 12-27-1260 (Supp. 1991) which requires that all earnings on investments from the SHIMS fund must accrue to and be deposited in the SHIMS fund.

## II. *DISCUSSION*

As a threshold matter, we address the State Treasurer's assertion that the plaintiffs, as mere taxpayers, do not have standing to bring this action.

As a general rule, private citizens may not restrain official acts when they fail to allege and prove damage to themselves different in character from that sustained by the public generally. *Shillito v. City of Spartanburg*, 214 S.C. 11, 51 S.E. (2d) 95 (1948). An exception to this rule exists when the act sought to be enjoined is an unlawful diversion of public funds, such as the expenditure of public funds under an alleged unconstitutional statute. *Id.* at 22, 51 S.E. (2d) at 97. In such cases, a taxpayer who may be compelled to pay the assessment, or who has contributed to the sum jeopardized, is considered to have sufficient interest to enjoin the illegal act. *Id. See also Kirk v. Clark*, 191 S.C. 205, 4 S.E. (2d) 13 (1939) (the principle is firmly settled in this State that a taxpayer may maintain an action in equity, on behalf of himself and all other taxpayers, to restrain public officers from paying out public money for purposes unauthorized by law). Because the plaintiffs have alleged that the challenged expenditure of tax revenues violates the constitution, we find that they have standing to bring this action and turn to the merits of their claim that the Legislature lacks authority to divert SHIMS tax revenue to a use different from that for which they were levied.

In *State ex rel. Edwards v. Osborne*, 193 S.C. 158, 7 S.E. (2d) 526 (1940) (*Edwards I*) and *State ex rel. Edwards v. Osborne*, 195 S.C. 295, 11 S.E. (2d) 260 (1940) (*Edwards II*), we held that former S.C. Const. art. X, § 3 prohibited the diversion of gasoline tax revenue to purposes other than those for which the tax was levied. Here, the plaintiffs contend that article X, section 5, the successor of article X, section 3, similarly prohibits the diversion of SHIMS tax revenue to pay debts arising from Hurricane Hugo. We disagree.

Former article X, section 3, as applied in the *Edwards* cases, stated:

> No tax shall be levied except in pursuance of a law which shall distinctly state the object of the same; *to which object the tax shall be applied.* (Emphasis added.)

Former article X, section 3 was substantially amended in 1977 and provisions similar to those contained in that section were incorporated into article X, section 5, which currently provides:

No tax, subsidy or charge shall be established, fix, laid or levied, under any pretext whatsoever, without the consent of the people or their representatives lawfully assembled. *Any tax which shall be levied shall distinctly state the public purpose to which the proceeds of the tax shall be applied.* (Emphasis added.)

In our view, the effect of the 1977 amendment was to remove the constitution's limitation of the Legislature's power to appropriate revenues as needed among legitimate government objectives. Accordingly, we hold that article X, section 5 only requires the Legislature to state the public purpose for which taxes are levied. Article X, section 5, unlike former article X, section 3, does not prohibit the Legislature from amending the public purpose to which tax proceeds may be applied.

Turning to the facts of this case, we find that the appropriation of SHIMS revenues to the General Fund does not violate article X, section 5. Article X, section 5 applies only to tax levies and not to legislation which creates no new tax. *Wolper v. City of Charleston,* 287 S.C. 209, 336 S.E. (2d) 871 (1985). Legislation is said to levy a tax when it fixes the amount or rate to be imposed. *Morton, Bliss & Co. v. Comptroller General,* 4 S.C. 430, 455 (1873). The provisions of Act 501 challenged in this case do not fix the tax rate and, therefore, do not levy a tax. Accordingly, article X, section 5 does not apply and cannot prohibit the appropriations made by Act 501.

For the foregoing reasons, it is the judgment of this Court that sections 129.65 and 124.27 of 1992 Act No. 501 do not violate article X, section 5 of the South Carolina Constitution. Our holding renders it unnecessary to address the plaintiffs' claim that the Legislature has violated the balanced budget requirement of article X, section 7(a).

Judgment for the defendants.

CHANDLER, FINNEY, TOAL and MOORE, JJ., concur.